Filed 7/29/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 148

Gaye L. Ketelsen, Plaintiff and Appellant

v.

Dale J. Ketelsen, Defendant and Appellee

No. 990035

Appeal from the District Court of Barnes County, Southeast Judicial District, the Honorable Mikal Simonson, Judge.

AFFIRMED AS MODIFIED.

Opinion of the Court by Neumann, Justice.

Elizabeth Jane Sundby, 1323 South 23
rd
 Street, Suite G, Fargo, N.D. 58103, for plaintiff and appellant.

Dean E. Lenaburg, Lenaburg, Fitzner, Nelson, Hooper & Cruff, PLLP, P.O. Box 330, Valley City, N.D. 58072-0330, for defendant and appellee.

Ketelsen v. Ketelsen

No. 990035

Neumann, Justice.

[¶1] Gaye Ketelsen appealed from a Second Amended Judgment extending her spousal support payments at a reduced amount until February 1999 and then terminating them.  We hold the trial court’s modification of spousal support is supported by changed circumstances and is not clearly erroneous.  We affirm.

I

[¶2] Gaye and Dale Ketelsen were married in 1955.  After the parties lived separately for 10 to 15 years, Gaye Ketelsen was granted a divorce on the grounds of irreconcilable differences, in an original judgment, dated June 25, 1997.  At that time, Dale Ketelsen, age 64, was owner and operator of the Pingree Grain Elevator, and earned $20,000 per year.  Gaye Ketelsen, age 60, was not working and had been unemployed since 1983.  Dale Ketelsen was ordered to pay Gaye Ketelsen spousal support of $1,200 per month “continuing until [Dale Ketelsen] retires or [Gaye Ketelsen] remarries.”  The trial court valued the Pingree Elevator, including working capital, at $324,599.  The court awarded the elevator to Dale Ketelsen but ordered him to pay Gaye Ketelsen a one-half equity share, in the amount of $162,300, in 15 annual installments of $10,820 per year, plus six percent interest, payable annually, on the unpaid balance.

[¶3] Gaye Ketelsen moved for amendment of the judgment, requesting permanent spousal support.  The court denied the motion, and  explained its reasoning in a memorandum opinion, dated September 11, 1997:

At trial and now, Gaye wants permanent spousal support.  The Court’s award of spousal support was to continue until Gaye remarried or Dale retired.  The Court still does not believe that permanent spousal support is in order.  However, Gaye points out that Dale could “retire” 

and continue to earn an income close to what he earned while working.  The reason the Court used a benchmark such as retirement was that usually one’s income decreases at that time.  If Dale were in a position to retire and not see much of a reduction in income, this would not be in keeping with the Court’s reasoning.

On October 7, 1997 the court entered an Amended Judgment, denying permanent spousal support but requiring Dale Ketelsen to “notify [Gaye Ketelsen] ninety days prior to his retirement, in order to provide [Gaye Ketelsen] with an opportunity to have a hearing prior to the expiration of spousal support.”  

[¶4] On February 17, 1998, Dale Ketelsen notified Gaye Ketelsen he would be retiring on June 1, 1998 and his spousal support payments would cease at that time.  Gaye Ketelsen filed a motion requesting the court to order Dale Ketelsen to continue paying spousal support “until such time as the elevator . . . is sold.”  In an affidavit filed with her motion, Gaye Ketelsen described her situation following Dale Ketelsen’s retirement:

[B]ecause I will not attain the age of 62 until December of this year, I will be unable to receive any benefits until January, 1999.  Therefore, if my spousal support ceases, I will have no income until that time (payments will be $430.00 per month).  I should receive my property settlement payments as ordered by the Court, but said payments will be insufficient for me to support myself and pay my bills.

After an evidentiary hearing on the motion, the trial court entered a Second Amended Judgment, requiring Dale Ketelsen to pay a reduced spousal support of $800 per month through February 1999, at which time his spousal support obligation would terminate.  Gaye Ketelsen appealed.

II

[¶5] Gaye Ketelsen asserts the trial court’s termination of spousal support after February 1999 is clearly erroneous, because Dale Ketelsen still works part-time at the elevator and his income, including social security benefits,  has actually increased after his retirement. 

[¶6] The Second Amended Judgment, which terminates Dale Ketelsen’s support payments after February 1999, even though his income has not decreased, appears inconsistent with the court’s earlier explanation Dale Ketelsen’s support obligation would cease when his income decreased upon retiring.  A court cannot, however,  consider issues of property division and spousal support separately in a vacuum, but must examine those issues together.  
Nelson v. Nelson
, 1998 ND 176, ¶ 10, 584 N.W.2d 527. 

[¶7] After his retirement, Dale Ketelsen has continued to work part time at the elevator as a consultant to the new manager.  He earns gross annual income from the elevator of $9,600 and receives $13,200 in social security benefits, for a total gross income of $22,800.  He testified that when he retired on June 1, 1998 he told the elevator’s three employees if they can keep the elevator running with their “head above water” that would be “fine and dandy” but if it looks like the elevator will “sink” then we will be forced into “shutting the doors.”  

[¶8] The undisputed evidence shows Dale Ketelsen has attempted to sell the elevator without any success.  The elevator had net earnings in the year prior to the hearing on the motion of only $14,000.  Yet, under the divorce judgment Dale Ketelsen was required to make a property distribution to Gaye Ketelsen of $19,908 ($10,820 per year plus interest).  To make property distributions, Dale Ketelsen has had to use the dividend from elevator earnings and has also had to borrow money from the elevator.  He testified that additional withdrawals from the elevator to make the property distribution payments could result in the elevator losing its bond, which would force him to terminate the elevator operation. 

[¶9] In its memorandum opinion, the trial court explained the difficulty of the situation:

Dale’s position is that he has retired and is working parttime to supervise the new manager of the elevator.  This helps protect the investment both Dale and Gaye have in the elevator. . . .  Dale had to borrow money from the elevator to pay the property distribution installment to Gaye.

. . . . Gaye wants to be paid the $1200 until the elevator is sold or closes.  She also wants attorney’s fees. 

This is a clash between the needs of two people.  It is appropriate to order that spousal support end at the obligor’s retirement.  Here Gaye would be given some spousal support to tide her over from the time of Dale going on social security until she does the same. . . .

The Court also does not lose sight of the fact that Dale is in a difficult financial position because he cannot sell the elevator and must borrow from it to make the annual payment to Gaye.

Considering the elevator’s financial condition and meager earnings, the court found,

[Dale Ketelsen’s] earning capacity is reduced to the point he cannot make his annual property distribution payment to [Gaye Ketelsen] from his own funds.  To make this payment, he must borrow money from the elevator.

[¶10] The court recognized Gaye Ketelsen has financial needs with very little resources to meet them.  However, the court also recognized the elevator operation is in a precarious financial position, with no buyer in sight, and the court expressed concern about Dale Ketelsen being able to keep the elevator going as an operating entity for purposes of continuing to make property distribution payments to Gaye Ketelsen.  The trial court implicitly found the current financial status of the elevator constitutes a significant change in circumstances warranting termination of Dale Ketelsen’s support obligation after February 1999, when Gaye Ketelsen would also begin receiving social security benefits, even though Dale Ketelsen’s total income did not decrease upon retirement.  Balancing the parties’ needs and Dale Ketelsen’s ability to pay, the court concluded the spousal support obligation should continue at a reduced amount until February 1999 and then terminate.  

[¶11] There must be a material change in circumstances to justify a modification of spousal support.  
Mahoney v. Mahoney
, 1997 ND 149, ¶ 24, 567 N.W.2d 206.  A trial court’s modification of spousal support based upon changed circumstances is a finding of fact, which will only be set aside on appeal if it is clearly erroneous.  
Schmitz v. Schmitz
,  1998 N.W.2d 203, ¶ 5, 586 N.W.2d 490.  Under N.D.R.Civ.P. 52(a) a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence this Court is left with a firm and definite conviction a mistake has been made.  
Id.
  In determining whether there has been a material change in circumstances to warrant modification of a spousal support obligation, the trial court must examine the extent the changes were contemplated at the time of the original decree.  
Schmitz v. Schmitz
, 1998 ND 203, ¶ 12, 586 N.W.2d 490.  

[¶12] Dale Ketelsen’s retirement was contemplated and accommodated in the original support award, which provided his spousal support obligation would cease upon his retirement.  On the other hand, Dale Ketelsen’s decision to continue working part time after his retirement, resulting in no reduction in total income, was not contemplated by the court, and is a factor weighing in favor of Dale Ketelsen having the ability to continue paying some spousal support.  In addition to Dale Ketelsen’s retirement, however, other material changes have occurred since the parties’ divorce.

[¶13] One change in circumstance, apparently not contemplated by the court when it initially awarded spousal support, is that Dale Ketelsen has been required  to borrow money from the elevator to make the annual property distribution payments, which, in turn, has placed the elevator’s bond at risk and has jeopardized continued operation of the elevator.  The annual equity payments to Gaye Ketelsen have threatened the ongoing viability of the elevator, from which those payments are derived.  The continued operation of the elevator directly affects Dale Ketelsen’s ability to pay spousal support and to make the annual property distribution payments.  If the elevator is forced to close its doors and if, as the record evidence indicates, there is no buyer, it could become financially impossible for Dale Ketelsen to continue paying either spousal support or property distribution payments.  

[¶14] Another changed circumstance is that as of February 1999, both parties started receiving social security benefits. Those benefits increase Dale Ketelsen’s ability to pay support, but lessen Gaye Ketelsen’s need for support.

III

[¶15] The trial court recognized both parties are financially burdened.  In modifying the spousal support award the court attempted to balance Gaye Ketelsen’s needs with Dale Ketelsen’s needs and ability to pay.  The amended support order attempts to make it possible for Dale Ketelsen to continue the elevator as a viable and operating entity, capable of generating sufficient cash flow for him to continue making annual property distribution payments to Gaye Ketelsen.  

[¶16] We are not left with a definite and firm conviction the trial court made a mistake.  The material changes in circumstances support the trial court’s decision to extend reduced support payments for Gaye Ketelsen until she began receiving social security and to then terminate spousal support, as contemplated in the original judgment. 

[¶17] We are concerned, however, that the same uncertainties the trial court found supported its modification of spousal maintenance might also leave Gaye Ketelsen with neither property distribution nor spousal support.  To guard against that unfortunate possibility, we believe prudence requires the trial court retain jurisdiction to reinstate spousal support payments, should a future change in circumstances require.  We order the judgment modified to reflect that retained jurisdiction.  
See
 
McAdoo v. McAdoo
, 492 N.W.2d 66, 70 (N.D. 1992).  

IV

[¶18] The trial court denied Gaye Ketelsen’s request for an award of attorney fees under N.D.C.C. § 14-05-23.  An award of attorney fees under this statute is within the sound discretion of the trial court and will not be set aside absent an abuse of discretion.  
Kautzman v. Kautzman
, 1998 ND 192, ¶ 32, 585 N.W.2d 561.  A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner or when its decision is not the product or rational mental process.  
Id.
  In deciding whether to award attorney fees in a divorce action the trial court must balance one party’s need against the other party’s ability to pay.  
Wilhelm v. Wilhelm
, 1998 ND 140, ¶ 21, 582 N.W.2d 6. 

[¶19] In support of her request for attorney fees, Gaye Ketelsen asserts Dale Ketelsen’s “action in terminating his spousal support obligation” and the “disparity in the parties’ incomes” justify an award of attorney fees to her.  Dale Ketelsen’s notification to Gaye Ketelsen his support payments would terminate because he was retiring is in accord with the divorce judgment.  In consideration of the disparity in the parties’ incomes, the trial court extended Dale Ketelsen’s support obligation until Gaye Ketelsen began receiving social security benefits.  Under these circumstances, we are not convinced the trial court abused its discretion in denying Gaye Ketelsen’s request for attorney fees.   

[¶20] We affirm the judgment as modified. 

[¶21] William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Maring, Justice, dissenting.

[¶22] I respectfully dissent from the majority opinion because the trial court’s findings of fact are not supported by the evidence, the conclusions of law are not supported by the findings of fact, and I am left with a definite and firm conviction the trial court made a mistake.

[¶23] Gaye Ketelsen asserts that the trial court erred in terminating her spousal support.

[¶24] The original decree was entered on June 25, 1997.  The trial court found at that time Dale Ketelsen earned $20,000 a year and was the sole owner and operator of the Pingree Grain Elevator.  The court valued the elevator at $324,599 which included a value for the elevator of $150,000 and an amount of working capital of $174,599.  The court awarded Gaye Ketelsen one-half of the total or $162,300, which is to be paid in 15 installments of $10,820 per year plus 6 percent interest per annum.  The court found that the elevator was an income producing asset.  It further awarded Gaye Ketelsen spousal support in the amount of $1,200 per month until either Dale Ketelsen retired or Gaye Ketelsen remarried, whichever occurred first.  

[¶25] Following the entry of the original judgment, Gaye Ketelsen moved to alter or amend the judgment requesting that the court more clearly define retirement and require Dale Ketelsen to provide advance notice to her of his pending retirement.  The trial court refused to create a definition of retirement, but did require Dale Ketelsen to give Gaye Ketelsen a ninety day written notice prior to his retirement.  The trial court indicated in its memorandum opinion of September 11, 1997, that such notice would give Gaye Ketelsen “an opportunity to have a hearing to explore Dale’s anticipated financial condition after he retires.”  Although the court did not believe that permanent spousal support was in order, it is clear that it recognized that Dale could “retire” and continue to earn an income close to what he earned while working.  In fact, the court stated:  “The reason the court used a benchmark such as retirement was that usually one’s income decreases at that time.  If Dale were in a position to retire and did not see much of a reduction in income, this would not be in keeping with the court’s reasoning.”  The trial court, thus, recognized that Dale Ketelsen’s “retirement” may not be consistent with the trial court’s use of retirement as a benchmark, i.e., reduction in one’s income.  

[¶26] In accordance with the court’s memorandum, an amended judgment was filed on October 7, 1997.  No appeal was taken from the first judgment or the amended judgment.  

[¶27] On February 17, 1998, Dale Ketelsen notified Gaye Ketelsen he would retire on June 1, 1998. 

[¶28] On May 28, 1998, Gaye Ketelsen moved the court for an order continuing Dale Ketelsen’s spousal support to her.  Dale Ketelsen resisted the motion for amendment of the judgment.

[¶29] Gaye Ketelsen’s position was that Dale Ketelsen’s income overall had not decreased and in fact had increased.  She asserted he should therefore not be entitled to terminate spousal support based on “retirement.”  Dale Ketelsen’s position was that he in fact retired on June 1, 1998, and applied for social security, which he anticipated would be $1,100 per month.  In addition, he went to part-time work at the elevator drawing a salary of $800 per month gross.  In his affidavit of July 31, 1998, Dale Ketelsen stated he “borrowed $10,677 from the elevator for the support of the plaintiff and myself.”  He also claimed he would not have sufficient funds to maintain spousal support for the plaintiff because most of his assets were tied up in the elevator which needed all of the working capital available.  He indicated he had withdrawn working capital to pay Gaye Ketelsen a property distribution payment.

[¶30] The trial court in its findings of fact filed on November 30, 1998, found the defendant’s net monthly income from the elevator was $640 and his social security benefits were $1,100 per month.  The trial court also found “the defendant has had to borrow money from the elevator to pay the property distribution installment to the plaintiff.”  The trial court further found:  “The court does not lose sight of the fact that the defendant is in a difficult financial position because he cannot sell the elevator and must borrow from it to make the annual payment to Gaye.”  The court concluded it was appropriate to extend the spousal support at the reduced amount of $800 per month through February 1999 at which time Gaye Ketelsen would be receiving social security benefits herself.  A second amended judgment was entered on November 30, 1998.  Gaye Ketelsen appeals from this second amended judgment.  

[¶31] The issue before the trial court on the motion of Gaye Ketelsen was whether Dale Ketelsen had in fact had a decrease in his income since the date of the original decree.  The evidence reveals that at the time the original divorce judgment was entered Dale Ketelsen earned $20,000 per year and at the time of the motion hearing, he earned a salary of $9,600 and received social security benefits of $13, 200 for a total gross income of $22,800.  Simple math dictates that his income had increased and not decreased.  Gaye Ketelsen, on the other hand, went from receiving $1,200 per month spousal support to zero spousal support, leaving her with no income and forcing her to utilize her property division for living expenses.  The majority indicates that there was “a change of circumstances” in that Gaye would start receiving social security benefits at age 62.  The record indicates that in the original findings of fact the trial court found that Gaye would receive $330 per month at age 62 for social security benefits.  This would leave her with an income of $3,960 as compared to Dale Ketelsen’s income of $22,800. 

[¶32] Under these facts what then is the basis for the termination of spousal support?  Although Dale Ketelsen never brought a motion to modify the amended judgment based on a material change in circumstances, it appears he resisted Gaye Ketelsen’s motion on that ground.  It is well settled in our law that a party seeking a modification of spousal support bears the burden of showing a material change in circumstances warranting a modification of spousal support.  
Schmitz v. Schmitz
, 1998 ND 203, ¶ 5, 586 N.W.2d 490.  The majority opinion attempts valiantly to find  “a material change in circumstances.”  The fact is the trial court’s findings, including the implied finding, are not supported by the record and consequently there are no findings that support the conclusion there is a material change in circumstances in this case.  

[¶33] The trial court in finding of fact number five on remand states: 

That the defendant’s earning capacity is reduced to the point he cannot make his annual property distribution payment to the plaintiff from his own funds.  To make this payment, he must borrow money from the elevator. 

From this finding and the trial court’s memorandum opinion of October 20, 1998, the majority implies a finding that the current financial status of the elevator constitutes a significant change in circumstances warranting termination of Gaye Ketelsen’s spousal support.  Yet there is no evidence in the record that there has been a change in the financial status of the elevator since the time of the original judgment entered on June 25, 1997.

[¶34] Dale Ketelsen testified at the motion hearing and asserted in his affidavit dated July 31, 1998, that he withdrew working capital from the elevator to pay Gaye Ketelsen’s second property settlement payment.  He claims he cannot take out more working capital without jeopardizing the elevator bond.  Dale Ketelsen also testified  he hired someone to try to sell the elevator in May 1998 and that an ad was placed first either in June or July 1998 in the Grainmen’s Mirror.  He testified that as of the date of the hearing August 18, 1998, there were two inquiries, but that he did not have a buyer yet.  The difficulty of selling a small town elevator, the situation with the elevator’s working capital and the difficulty in being bonded were all before the trial court at the time of the original judgment when the court determined the value of the elevator, the division of property and spousal support.  The trial court stated in its memorandum opinion of April 5, 1997: 

The Knudson appraisal was properly done.  Mr. O’Meara testified of some more recent sales.  He also told the court of the difficulty in trying to sell such an elevator in a small North Dakota town.  Many small town elevators stand vacant and cannot be sold.  Farmers no longer buy them for personal storage.  The future of the small country elevator is bleak.  Dale’s elevator cannot load a unit train.  Unit train started with 26 cars.  The bigger elevators started loading 52 car trains.  Now the larger elevators are loading 104 car trains.  For an elevator that does not load any unit trains, the hand writing is on the wall.  Even if a buyer could be found, a major problem is bonding.  To be bonded, an elevator must have one dollar of capital for each bushel of grain.  When Dale bought into the elevator in 1977, he had, and still has, difficulty in being bonded.  His capital is somewhere around $200,000 and a line of credit from Atwood Kellogg allow him to be bonded.  Specifically, the elevator has a 247,000 bushel capacity.  To stay bonded Dale has $189,000 in working capital and for instance last fall borrowed $200,000 from Atwood Kellogg to remain bonded.  It is very doubtful a new buyer could do the same.  What is likely is that Dale will run the elevator until he retires and, at best, he will sell it piecemeal, and, at worse, it will stand empty with little of the assets being sold.

The Knudson appraisal was persuasive in that it is professionally done by an appraiser in the field. The O’Meara opinion is valuable because it addresses some more recent happenings on the small rural elevator front.  This is also buttressed by the Joe Peltier letter.

Fully aware of the difficulty of selling this elevator and cognizant of the financial condition of the elevator, the trial court determined the value of the elevator and the working capital and awarded one-half to Gaye Ketelsen in 15 annual installments.  He awarded sole ownership of the Pingree Elevator to Dale Ketelsen recognizing “the North Dakota Supreme Court has said that ‘[c]ourts should avoid a property distribution that will destroy or damage the ability of one of the parties to earn a livelihood or which will destroy the value of the property.’  
Pankow v. Pankow
, 371 N.W.2d 153, 157 (N.D. 1985).”  

[¶35] I can find nothing in the record that indicates the elevator’s financial condition and earnings status changed between the time of the original divorce on June 25, 1997, and the date of the motion hearing on August 18, 1998.  The only thing that occurred was Dale Ketelsen’s actual attempt to sell the elevator within the two months prior to the hearing and his not yet having a buyer at the time of the hearing.  All of these other matters, i.e., working capital, bonding difficulties and sale difficulties were contemplated at the time of the original decree.

[¶36] If in fact the viability of the elevator without the involvement of Dale Ketelsen in its operation is so precarious and Gaye Ketelsen must share in the risk of losing this asset or having its value greatly diminished by Dale Ketelsen’s full retirement from the operation or having it sold piecemeal for very little, then viewing property division and spousal support together under the facts of this case makes an award of permanent spousal support appropriate.

[¶37] Because the record does not support the court’s finding of a material change in circumstance, I conclude the second amended judgment must be reversed.

[¶38] Mary Muehlen Maring