2001 ND 191

**Kathleen M. SOMMER, Plaintiff and Appellee**

v.

**Donald H. SOMMER, Defendant and Appellant.**

**No. 20010044.**

Supreme Court of North Dakota.

Dec. 5, 2001.

Mary Kathryn Kelsch, Bair, Bair, Garrity & Kelsch, LLP, Mandan, for defendant and appellant.

Shari J. McPhail, McPhail Law Firm, Bismarck, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Donald Sommer appeals from a judgment dated December 26, 2000, which granted the parties a divorce, divided their marital property, and ordered Donald to pay spousal support. Donald challenges the award of spousal support. We hold the trial court's decision to award spousal support was not clearly erroneous and affirm the judgment. We remand the case to the trial court to determine whether Kathleen should be awarded attorney fees for this appeal.

I

[¶ 2] Donald and Kathleen Sommer were married on September 11, 1971. Their marriage produced three children. Marty, who was 26 at the time of trial, was born in 1974. Jeremy, who was 23 at the time of the trial, was born in 1977. Dallas, who was 20 at the time of the trial, was born in 1980. After their marriage, Donald and Kathleen lived in Northwood, North Dakota, until 1978. They then moved to Washburn, North Dakota, when Donald began working at Great River Energy in Underwood, North Dakota.

[¶ 3] At the time of the trial, Donald was 52 years old. He is a high school graduate and received a two-year degree in mechanics from Wahpeton State School of Science in 1970. At the time of trial, he had been employed with Great River Energy for 22 years and was working full-time at $25.18 an hour. Donald's gross income for the years 1997, 1998, and 1999 was $58,688.39, $68,400.00, and $62,368.38, respectively.

[¶ 4] Kathleen was 50 years old at the time of trial. She is a high school graduate and received a clerical certificate from the North Dakota State School of Science in 1969. From 1969 until 1978, she worked as a clerk and secretary for a hospital in Northwood, North Dakota. From 1978 until 1983, she stayed at home with her children and provided child care in their home. Also, for about one year of this time, she worked one day a week at the McLean County Courthouse. From 1983 until 1984, Kathleen worked in medical records at the nursing home in Underwood. From 1984 to 1986, Kathleen worked as a mail carrier in Underwood for the United States Postal Service. In 1986, she was transferred into a clerking position at the post office in Washburn.

[¶ 5] Until 1997, Kathleen's status with the Postal Service was that of a part-time employee; however, she usually carried full-time hours by working extra hours at the post office in Bismarck, North Dakota, and by setting up recycling programs for postal facilities throughout the United States. In November of 1997, Kathleen was involved in a car accident in which she injured her neck and shoulders. After the accident, she returned to work at the post office in Washburn as a part-time employ-

ee. A temporary assignment to light duty was placed on her by Dr. William D. Canham, a doctor who examined Kathleen at the request of the Postal Service. Kathleen testified she was not given the option to work additional hours at the post office in Bismarck after the light duty restriction was placed on her; therefore, she was no longer able to carry full-time hours as she did before the accident.

[¶ 6] At the time of the trial, Kathleen worked an average of eight hours per week for the post office at $20.25 per hour. She also earned about $300 per month working for the Council for Educational Travel USA, a foreign exchange student program. Kathleen's gross income for the years 1997, 1998, and 1999 was $36,258.93, $11,053.93, and $15,537.63, respectively.

[¶ 7] Donald and Kathleen lived together in Washburn until March 20, 2000, when Kathleen applied for a temporary protection order against Donald. A hearing was held on March 27, 2000, and a six-month permanent protection order was entered. Also on March 27, 2000, Kathleen commenced an action for divorce. The trial court entered a judgment of divorce on December 26, 2000, that awarded Kathleen permanent spousal support of $850 per month. Donald appeals that award.

## II

[¶ 8] Spousal support determinations are treated as findings of fact which will not be set aside on appeal unless clearly erroneous. *See Johnson v. Johnson,* 2000 ND 170, ¶ 49, 617 N.W.2d 97. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) only if it is induced by an erroneous view of the law, there is no evidence to support it, or,

although some evidence supports it, based on the entire record, we are left with a definite and firm conviction a mistake has been made. *See Riehl v. Riehl,* 1999 ND 107, ¶ 7, 595 N.W.2d 10.

[¶ 9] Trial courts must consider the Ruff Fischer guidelines in making a determination of spousal support, both as to amount and duration. *See id.* at ¶ 8 & n. 1 (citing *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966)). The factors include:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*See id.* at ¶ 8 (quoting *Van Klootwyk v. Van Klootwyk,* 1997 ND 88, ¶ 14, 563 N.W.2d 377). Although a trial court need not make specific findings as to each factor, the rationale for its determination must be discernable. *See id.*

[¶ 10] Upon granting a divorce, a court may compel either of the parties to pay the other party spousal support "during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively." N.D.C.C. § 14–05–24; *see also Marschner v. Marschner,* 2001 ND 4, ¶ 10, 621 N.W.2d 339.[1] In considering the circum-

---

1. Subsequent to the entry of the divorce judgment in this case, the legislature amended N.D.C.C. § 14–05–24. The language of section 14–05–24 that is pertinent to this case now appears in N.D.C.C. § 14–05–24.1. Section 14–05–24.1 provides: "Taking into consideration the circumstances of the parties, the court may require one party to pay spous-

stances of the parties, a trial court must take into account "the needs of the disadvantaged spouse and the supporting spouse's needs and ability to pay." *Marschner*, at ¶ 10. A disadvantaged spouse is one who has "foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity." *See Riehl,* 1999 ND 107, ¶ 9, 595 N.W.2d 10 (quoting *Van Klootwyk,* 1997 ND 88, ¶ 16, 563 N.W.2d 377). Furthermore, a valid consideration in determining whether a spouse is disadvantaged as a result of the divorce is whether there is a need to equitably balance the burdens created by the divorce where the parties cannot maintain the same standard of living apart as they enjoyed together. *See Wald v. Wald,* 556 N.W.2d 291, 297 (N.D.1996) ("We recognize a court must balance the burden created by a divorce when it is impossible to maintain two households at the pre-divorce standard of living."); *Wiege v.Wiege,* 518 N.W.2d 708, 712 (N.D.1994) ("The trial court's award of permanent support, combined with the rehabilitative support, equitably shares the overall reduction in the parties' separate standards of living and is not clearly erroneous.") (internal quotation marks omitted); *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992) ("Continuance of a standard of living is a valid consideration in spousal support determinations, *e.g., Bagan v. Bagan,* 382 N.W.2d 645 (N.D.1986), as is balancing the burdens created by the separation when it is impossible to maintain two households at the pre-divorce standard, *e.g., Weir v. Weir,* 374 N.W.2d 858 (N.D.1985).").

[¶ 11] Donald argues that, because Kathleen was employed throughout the parties' marriage, the trial court erred in finding Kathleen to be a disadvantaged spouse. However, a complete abandonment of work outside the home is not a prerequisite to being a disadvantaged spouse; rather, a spouse who remains out of the workforce to any degree in order to provide child care or homemaking services "has foregone opportunities and has lost advantages that accrue from work experience and employment history." *Weigel v. Weigel,* 2000 ND 16, ¶ 13, 604 N.W.2d 462. In concluding that Kathleen was a disadvantaged spouse, the trial court found that she has "foregone opportunities while raising their children and she has contributed during the marriage to the defendant's increased earning capacity by keeping the family going while he was able to devote much of his time to making a better living to be better equipped to support their family." The evidence at trial established that Kathleen stayed at home for five years to care for the parties' children. The trial court's finding that she was disadvantaged is not clearly erroneous.

[¶ 12] Donald argues the trial court erred in determining the amount and duration of spousal support because the evidence did not support a finding of domestic violence on the part of Donald under the Ruff–Fischer guidelines. The evidence at trial established that a six-month domestic violence protection order was issued against Donald on March 27, 2000. Additionally, Kathleen testified as to other incidents of domestic violence. Thus, there was evidence in the record of domestic violence on the part of Donald. The trial court's finding of domestic violence is not clearly erroneous.

al support to the other party for any period of time. The court may modify its spousal support orders."

[¶ 13]   Donald also argues the trial court erred because it did not consider financial misconduct on the part of Kathleen when it determined the amount and duration of spousal support.   However, some of Kathleen's financial decisions proved to be lucrative for the parties.   Also, a number of the real estate transactions she entered into were for the benefit of the parties' children.   Additionally, the evidence at trial established Donald acquiesced in Kathleen's handling of the parties' financial affairs.   Under these circumstances, it was not clearly erroneous for the trial court to decline to find financial misconduct on the part of Kathleen.

[¶ 14]   Next, Donald argues that, even if the trial court's application of the Ruff–Fischer guidelines support an award of spousal support, the trial court erred in awarding permanent rather than rehabilitative spousal support.   We recognize permanent spousal support and rehabilitative spousal support as two distinct remedies.   *See Riehl,* 1999 ND 107, ¶ 11, 595 N.W.2d 10.   Permanent spousal support is generally appropriate when the disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities lost in the course of the marriage.   *See id.* at ¶ 18 (citing *Kautzman v. Kautzman,* 1998 ND 192, ¶¶ 19, 20, 585 N.W.2d 561 ("permanent spousal support appropriate where wife's 'earning capacity will never approach [husband's]' and the parties enjoyed a 'very comfortable standard of living' "); *Donarski v. Donarski,* 1998 ND 128, ¶¶ 6, 8, 581 N.W.2d 130 ("wife's 'limited marketable job skills' and 'the substantial disparity in income between the parties' justified award of permanent spousal support")).   Furthermore, permanent spousal support may be awarded "where the marriage has been of long duration and the dependent spouse has health problems or is of such an age that

adequate rehabilitation is unlikely."   *Kouba v. Kouba,* 544 N.W.2d 142, 143 (N.D. 1996).   In contrast, rehabilitative spousal support is appropriate "when it is possible to restore an economically disadvantaged spouse to independent economic status or to equalize the burden of divorce by increasing the disadvantaged spouse's earning capacity."   *See Riehl,* at ¶ 12 (citation omitted).   However, even when the disadvantaged spouse is capable of rehabilitation, our Court has recognized permanent spousal support as an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living.   *See id.* at ¶ 18 (citing *Weir,* 374 N.W.2d at 864 ("permanent support appropriate because disadvantaged spouse 'is likely to have a much lower income producing capacity than [the other spouse], which earning capacity she aided . . . in obtaining' ")).

[¶ 15]   The evidence in the record supports the trial court's findings, which support an award of permanent spousal support of $850 per month.   Donald and Kathleen's twenty-nine year marriage was of long duration.   Kathleen's ability to work full-time for the Postal Service is limited as a result of the automobile accident.   There is a vast disparity in income and earning potential between Donald and Kathleen.   In fact, Donald's own expert witness testified that even if Kathleen were to work full-time in the private sector, she would earn approximately the same income that she currently earns working part-time for the Postal Service.   Finally, the trial court considered the fact that Donald and Kathleen's separate standards of living were reduced upon their divorce.   The trial court's award of permanent spousal support is not clearly erroneous.

III

[¶ 16]   Donald argues the trial court erred because it did not consider the

property division when it determined the amount of spousal support awarded to Kathleen. A trial court cannot "consider issues of property division and spousal support separately in a vacuum, but must examine those issues together." *Ketelsen v. Ketelsen,* 1999 ND 148, ¶ 6, 598 N.W.2d 185. The trial court in this case equitably divided the property of the marital estate before it made findings of fact on the issue of spousal support. Also, in its memorandum opinion, the trial court cited the portion of *Schiff v. Schiff* where we said, "A relevant factor in setting the amount of support for a disadvantaged spouse is the distribution of marital property and the liquidity or income-producing nature of the property distributed to the disadvantaged spouse." 2000 ND 113, ¶ 42, 611 N.W.2d 191. Furthermore, the trial court also cited the portion of *Mellum v. Mellum* where we said, "[P]roperty division and spousal support are interrelated, and often must be considered together." 2000 ND 47, ¶ 19, 607 N.W.2d 580 (alteration in original) (quoting *Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 16, 574 N.W.2d 790). The trial court properly considered the parties' property distribution when it determined the spousal support award.

IV

[¶ 17] Donald argues the trial court erred by not providing for the elimination or reduction of the spousal support award upon Donald's retirement. An award of permanent spousal support is subject to future modification. *See van Oosting v. van Oosting,* 521 N.W.2d 93, 100 (N.D.1994). A trial court's power to modify an award of spousal support is statutory and is not dependent upon any express reservation of continuing jurisdiction in the divorce judgment. *See Wheeler v. Wheeler,* 548 N.W.2d 27, 29 (N.D.1996) (citing N.D.C.C. § 14–05–24). Therefore, in fashioning an original divorce decree, it

is not necessary for a trial court to specify every contingency that would reduce spousal support. *See Wiege v. Wiege,* 518 N.W.2d 708, 712 (N.D.1994) (finding that the trial court did not err by failing to provide for automatic termination of spousal support upon remarriage of the supported spouse); *Roen v. Roen,* 438 N.W.2d 170, 173 (N.D.1989) (holding that the trial court did not err by failing to provide for termination of spousal support upon the death or remarriage of the supported spouse because the court had power to modify the spousal support award).

[¶ 18] Should Donald wish to decrease the amount of his spousal support payments upon his retirement, he may bring a motion for modification at that time. *See Schmitz v. Schmitz,* 2001 ND 19, ¶ 8, 622 N.W.2d 176. In order to modify an award of spousal support, the obligor spouse has the burden of showing a material change in circumstances justifying the modification. *Id.* "A 'material change' is something substantially affecting the financial abilities or needs of a party." *Id.*

[¶ 19] In prior cases, we have held that the voluntary retirement of a supporting spouse is not a change in circumstances justifying a modification of spousal support. *See Wheeler,* 548 N.W.2d at 31; *Huffman v. Huffman,* 477 N.W.2d 594, 598 (N.D.1991). Thus, it could be argued that these cases would bar any future motion by Donald to modify his spousal support obligations upon his retirement. However, the parties in *Wheeler* and *Huffman* entered into stipulated agreements regarding spousal support prior to entry of the divorce judgment; therefore, the burden on the supporting spouses to show that their voluntary retirement was a material change in circumstances was much greater than it would have been had they been ordered to pay spousal support based solely on the trial court's findings. *See Wheeler,* at 30 (stating that a change in circum-

stances is reviewed with greater scrutiny when the parties stipulate to a spousal support agreement); *Huffman*, at 596 ("The trial court should be more reluctant to modify an original decree which is based upon an agreement of the parties than one based upon the court's findings.").

[¶ 20] In contrast, when a supporting spouse has been ordered to pay spousal support based on the trial court's findings, a voluntary change in employment by the supporting spouse that results in lower income may be a valid basis for a modification of spousal support if the change in employment was reasonable and made in good faith. *See Mahoney v. Mahoney*, 538 N.W.2d 189, 192–93 (N.D.1995) (affirming the trial court's finding of a change in circumstances based on the supporting spouse's decrease in income that occurred when he voluntarily changed employment). Likewise, voluntary retirement by a supporting spouse that results in a material change in circumstances may, under some circumstances, be a valid basis for modification of spousal support. *Cf. id.; see also Pimm v. Pimm*, 601 So.2d 534, 537 (Fla.1992); *In re Marriage of Smith*, 77 Ill.App.3d 858, 33 Ill.Dec. 332, 396 N.E.2d 859, 863–64 (1979); *Smith v. Smith*, 419 A.2d 1035, 1038 (Me.1980); *Silvan v. Sylvan*, 267 N.J.Super. 578, 632 A.2d 528, 530 (App.Div.1993); *Deegan v. Deegan*, 254 N.J.Super. 350, 603 A.2d 542, 545–46 (App.Div.1992). Thus, our prior holdings in *Wheeler* and *Huffman* would not bar Donald from bringing a motion for modification of spousal support based upon his voluntary retirement.[2]

[¶ 21] Donald argues that his retirement is a known future event; therefore, the trial court is inviting unnecessary litigation by not providing for an automatic reduction of spousal support upon his retirement. However, the exact date of Donald's retirement is not known as he testified "I suppose I'd work till retirement age, 60, 62. It all depends on my health." Furthermore, no evidence at trial established how much Donald's income would actually be reduced at his retirement. *See Mahoney*, 538 N.W.2d at 192 (quoting *Mahoney v. Mahoney*, 516 N.W.2d 656, 660 (N.D.Ct.App.1994) (" 'Because a change in employment does not necessarily result in a change in financial circumstances, the proper time for a court to determine whether a change has occurred ... is after the fact.' ")). Thus, it was not clearly erroneous for the trial court to decline to provide for an automatic reduction in spousal support upon Donald's retirement.

### V

[¶ 22] Kathleen requests that we award her attorney fees incurred on this appeal. " 'Although we have concurrent jurisdiction with the trial court to award attorney fees on appeal, we prefer that the trial court decide the issue.' " *Schmitz*, 2001 ND 19, ¶ 13, 622 N.W.2d 176 (quoting *Conkins v. Steffan*, 532 N.W.2d 59 (N.D. 1995)).

### VI

[¶ 23] We, therefore, affirm the judgment of the trial court and remand Kath-

2. While we find that our prior case law would not bar Donald from bringing a motion for modification at his retirement, we leave open the secondary question of what a supporting spouse must show to actually succeed on a motion for modification based on the supporting spouse's voluntary retirement until this issue is presented to us. Courts have relied on a number of different tests to determine when such a motion should be granted. *See* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine*, 29 Conn. L. Rev. 647, 685–87 (1997); Colleen Marie Halloran, Comment, *Petitioning a Court to Modify Alimony When a Client Retires*, 28 U. Balt. L. Rev. 193, 212–29 (1998).

leen's request for attorney fees on appeal to the trial court.

[¶ 24] VANDE WALLE, C.J., and NEUMANN, and KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 25] I concur in the result.

[¶ 26] I am concerned that the majority opinion may be construed as suggesting spousal support is appropriate whenever a spouse will not be able to maintain the same standard of living after a divorce. Sadly, a reduced standard of living is often the case for both parties to a divorce.

[¶ 27] Spousal support is appropriate when a party has been disadvantaged as a result of the marriage. *Weigel v. Weigel,* 2000 ND 16, ¶¶ 11–14, 604 N.W.2d 462; *Brown v. Brown,* 1999 ND 199, ¶ 32, 600 N.W.2d 869 ("A 'disadvantaged' spouse is one who has 'foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity.'" (quoting *Riehl v. Riehl,* 1999 ND 107, ¶ 9, 595 N.W.2d 10)). Certainly in the case of long-term marriages, permanent spousal support may be appropriate, but it should not be the norm when rehabilitative support can overcome the disadvantage resulting from the marriage. I am reassured by the long-standing position of this Court that rehabilitative, not permanent, spousal support is preferred. *See, e.g., van Oosting v. van Oosting,* 521 N.W.2d 93, 100 (N.D.1994); *Welder v. Welder,* 520 N.W.2d 813, 818 (N.D.1994); *Wiege v. Wiege,* 518 N.W.2d 708, 711 (N.D.1994); *Roen v. Roen,* 438 N.W.2d 170, 172 (N.D.1989).

[¶ 28] Dale V. Sandstrom, J.