2003 ND 186

**Gerald August CHRISTIANSON, Plaintiff and Appellant,**

v.

**Cecelia Marie CHRISTIANSON, Defendant and Appellee.**

No. 20030123.

Supreme Court of North Dakota.

Dec. 2, 2003.

Anne E. Summers, Dyer & Summers, P.C., Bismarck, N.D., for plaintiff and appellant.

Suzanne M. Schweigert, Smith Bakke Oppegard Porsborg Wolf, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Gerald Christianson is appealing a Northwest Judicial District Court judgment awarding Cecelia Christianson $900.00 per month in spousal support. Gerald Christianson argues that the district court erred in imputing income to him when determining his ability to pay, that Cecelia Christianson's needs as a disadvantaged spouse were not supported by the evidence, that temporary support should have been awarded, and that equalizing their income was inappropriate. Because we are unable to fully review the district court's finding that Cecelia Christianson is a disadvantaged spouse entitled to permanent support, we affirm that portion of its decision. Concluding the district court improperly calculated the amount of spousal support, we reverse and remand for proper calculation.

I

[¶ 2] Gerald and Cecelia Christianson married in June 1968. Gerald Christianson sued Cecelia Christianson for divorce in January 2001. At the time of trial, Gerald Christianson was 56 and Cecelia Christianson was 58. Gerald Christianson has a Bachelor of Science Degree in Biolo-

gy, a Master's Degree in School Administration, and a Specialist's Degree in Educational Leadership.

[¶ 3] Gerald Christianson had been working as a Superintendent at Parshall High School in Parshall, North Dakota. Following the 1999–2000 school year, he retired and began drawing benefits from the North Dakota Teachers' Fund for Retirement. He gave up his position in anticipation of obtaining a "state job" as a grant administrator, but the job never materialized. Before retiring, Gerald Christianson had an annual salary of $56,000, and with benefits, his compensation was close to $65,000.

[¶ 4] Gerald Christianson enrolled at North Dakota State University in Fargo, North Dakota, in August of 2000 to pursue a Specialist's Degree in Educational Leadership. The salary range for a person with this degree is between $50,000 and $90,000. While attending school at North Dakota State University, Gerald Christianson earned $692.00 per month as a graduate teaching assistant and $800.00 per month as a sales associate at Marshall Field's. Gerald Christianson's retirement income at the time gave him $2,273.86 per month. He forwarded $1,050.00 of that amount to Cecelia Christianson. Gerald Christianson is in good health, aside from occasional back pain.

[¶ 5] Cecelia Christianson has a Bachelor of Science Degree in Elementary Education. She is employed as an elementary school teacher at Plaza School in Plaza, North Dakota, earning $24,500. She also works part-time at the Cenex Convenience Store in Parshall, earning from $300 to $350 per month.

[¶ 6] On October 15, 2001, the district court awarded 60 percent of the marital property to Cecelia Christianson and 40 percent to Gerald Christianson. The district court found Cecelia Christianson to be a disadvantaged spouse and determined she could not be rehabilitated. The court awarded her permanent support in the amount of zero ($0.00) dollars. Given the fact that Gerald Christianson did not have full-time employment and was pursuing a degree, the court deferred setting the amount of spousal support until October 15, 2002.

[¶ 7] The district court found Cecelia Christianson had low job security; the school where she teaches has declining enrollment, and at some point it may no longer be feasible to keep the school open. It found that she may find it difficult to obtain other employment as a teacher because there are many elementary school teachers and she is 58 years old and does not have a portfolio, which is required by many schools.

[¶ 8] The district court also found the parties moved to different communities nine times during their marriage. It found these moves were made solely to advance Gerald Christianson's career, and little consideration was given to whether Cecelia Christianson could obtain a teaching job. It also found Cecelia Christianson's teaching career was interrupted by these moves; extended time away from the classroom does not look good on a resume. The district court found that being away from teaching also made it difficult for Cecelia Christianson to build retirement. Because the parties dipped into her retirement fund on four occasions, her retirement is a fraction of what it could have been. It also found that Cecelia Christianson has heel spurs in both feet and will eventually require surgery. Judgment was entered November 6, 2001.

[¶ 9] On January 16, 2003, the district court again reviewed the issue of support. The court found Cecelia Christianson's needs as a disadvantaged spouse had be-

come more pronounced since the divorce judgment had been entered; the A.G. Edwards stock portfolio awarded to her as part of the property division had sharply declined in value. The court also found that despite a concerted and good-faith attempt to obtain employment, Gerald Christianson has been unable to secure a position in the field of school administration. The court recognized that Gerald Christianson voluntarily gave up a $56,000 job, that the salary range for an individual possessing his type of degree is $50,000 to $90,000, and that his present earnings are significantly less than the prevailing amounts earned in the community by persons with a similar work history and occupational qualifications. The court found Gerald Christianson to be underemployed. The court used an equalization-of-income approach and imputed income to Gerald Christianson to set the support award at $900.00 per month. The amended judgment was entered on April 3, 2003.

[¶ 10] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

[¶ 11] Gerald Christianson argues the district court erred in finding Cecelia Christianson a disadvantaged spouse entitled to permanent spousal support.

[¶ 12] Cecelia Christianson argues that because Gerald Christianson failed to order a transcript of the trial, he cannot challenge the district court's finding that she is a disadvantaged spouse entitled to permanent spousal support.[1]

[¶ 13] We note that had the "disadvantaged spouse, permanent spousal support" issue been reviewable, Gerald Christianson would have been largely foreclosed from meaningful review because of his failure to provide a transcript of the proceedings leading to the November 6, 2001, judgment. In a divorce case, a district court "may require one party to pay spousal support to the other party for any period of time." N.D.C.C. § 14–05–24.1. "A determination on spousal support is treated as a finding of fact which will not be set aside on appeal unless clearly erroneous." *Sommers v. Sommers*, 2003 ND 77, ¶ 15, 660 N.W.2d 586. Rule 10(b), N.D.R.App.P., requires an appellant to file the trial transcript with this Court on appeal. *Sabot v. Fargo Women's Health Organization, Inc.*, 500 N.W.2d 889, 891 (N.D.1993). When the appellant fails to file a transcript, he or she assumes the consequences. If the record on appeal does not allow a meaningful and intelligent review of the error, we decline to review it. *Id.* at 892. *See also Flattum–Riemers v. Flattum–Riemers*, 2003 ND 70, ¶ 8, 660 N.W.2d 558; *Wagner v. Squibb*, 2003 ND 18, ¶ 5, 656 N.W.2d 674.

[¶ 14] ·Here, the lack of a transcript precludes meaningful review. We affirm on this issue.

## III

[¶ 15] Gerald Christianson argues that no authority exists for imputing income to

<hr>

1. That Cecelia Christianson was a disadvantaged spouse entitled to permanent spousal support was established by the district court's October 15, 2001, findings, conclusion, and order, and the November 6, 2001, judgment. That judgment was not appealed. If the judgment was final and appealable, it would be res judicata, and we normally would not review it. *See Ohio Cas. Ins. Co. v. Clark*, 1998 ND 153, ¶ 23, 583 N.W.2d 377. We need not decide whether it was res judicata, because res judicata was not raised by the parties and our resolution of the issue has the same result as if it were res judicata.

him for the purpose of calculating spousal support, that equalization of income was inappropriate for this case, and that the district court improperly assessed his ability to pay.

### A

[¶ 16] He argues spousal support is not the same as child support, in which the imputation of income is authorized, and claims no such authority exists in the case of spousal support.

[¶ 17] "Spousal support awards must be made in consideration of the disadvantaged spouse's needs and of the supporting spouse's needs and ability to pay." *Shields v. Shields*, 2003 ND 16, ¶ 10, 656 N.W.2d 712.

[¶ 18] Cecelia Christianson can point to no North Dakota statutory or case law providing for the imputation of income in spousal support cases. Other states have permitted imputing income in some cases. *See, e.g., Moore v. Moore*, 242 Mich.App. 652, 619 N.W.2d 723, 724–25 (2000); *In re Marriage of Carrick*, 560 N.W.2d 407, 410 (Minn.Ct.App.1997); *Grady v. Grady*, 295 Ark. 94, 747 S.W.2d 77, 78–79 (1988). Even if it were allowed, it would not be appropriate for this case. *See id.* The district court found that despite a concerted and good-faith attempt on Gerald Christianson's part to obtain employment, he has come up empty-handed in his job search.[2]

### B

[¶ 19] Gerald Christianson claims that the use of an income-equalization approach to spousal support was not appropriate.

[¶ 20] Equalization is not a goal of spousal support, and equalization of income between divorcing spouses is not a measure of spousal support although it is a factor that can be considered. *Sommers*, 2003 ND 77, ¶ 17, 660 N.W.2d 586. The amount of support ordered greatly exceeds Gerald Christianson's ability to pay and is not justified by "equalization of income."

[¶ 21] We reverse, concluding the district court improperly imputed income to Gerald Christianson when it sought to equalize the parties' incomes. We remand to the district court for proper calculation of spousal support based upon the parties' needs and ability to pay.

### IV

[¶ 22] Cecelia Christianson argues she should be awarded attorney fees on appeal because Gerald Christianson's actions have unreasonably increased the time and effort spent on the dispute.

[¶ 23] "The principal factors to be considered for deciding the amount of attorney fees are need and ability to pay." *Mahoney v. Mahoney*, 1997 ND 149, ¶ 40, 567 N.W.2d 206. "An award of attorney's fees in litigation about marital obligations between former spouses does not depend entirely on the merits of each position, although whether one party's actions unreasonably increased the time and effort spent on the dispute can be a factor." *Id.*

[¶ 24] Section 14–05–23, N.D.C.C., states that "during any time in which an action for separation or divorce is pending, the court, upon application of a party, may issue an order requiring . . . payment of attorney fees." Under this section we have concurrent original juris-

---

**2.** Contrary to the concurring and dissenting opinion's statement, at ¶ 36, the district court did *not* implicitly or explicitly find Gerald

Christianson was "voluntarily underemployed."

diction with the district court to award attorney fees on appeal. *Severson v. Severson,* 482 N.W.2d 594, 596 (N.D.1992).

[A]s we are an appellate court and exercise original jurisdiction rarely, as attorney's fees and costs involve the necessity of determining facts, and as we ordinarily do not determine facts, we prefer that the district court initially make the determination of attorney's fees even in conjunction with an appeal to our Court. *McIntee v. McIntee,* 413 N.W.2d 366, 367 (N.D.1987). When a party to a divorce action makes a motion in this Court for an award of attorney's fees on appeal, we generally remand the issue to the district court for a determination. *Roen v. Roen,* 438 N.W.2d at 174.

*Severson,* at 596.

[¶ 25] We remand this case to the district court for a determination of whether attorney fees should be awarded to Cecelia Christianson and, if so, for what amount.

V

[¶ 26] We reverse the district court's judgment as to the amount of spousal support and remand for further proceedings.

[¶ 27] CAROL RONNING KAPSNER, J., concurs. GERALD W. VANDE WALLE, C.J., I concur in the result remanding this case for further proceedings.

NEUMANN, Justice, concurring specially.

[¶ 28] I concur in the result. I agree with Justice Maring that imputation of income is appropriate for spousal support purposes, if supported by the evidentiary record, but I cannot affirm the imputation in this case. The trial court found Gerald Christianson had made a concerted and good faith attempt to obtain employment as a school superintendent, but made no

findings as to his earning ability in any other area.

[¶ 29] Even though the trial court found that, despite his good faith effort, Gerald Christianson could not obtain employment as a school superintendent, the trial court also effectively found that the salary of a school superintendent is an appropriate measure of Gerald Christianson's current earning ability. The two findings are simply inconsistent. I do not think our law permits an imputation of income for spousal support purposes based only on the obligor's prior employment, without some reason to believe his prior employment is an appropriate measure of his current earning ability.

[¶ 30] I would remand for additional proceedings to determine Gerald Christianson's earning ability, and for an award of spousal support based on that earning ability.

[¶ 31] WILLIAM A. NEUMANN concurs.

MARING, Justice, concurring in part and dissenting in part.

[¶ 32] I respectfully dissent from that part of the majority opinion holding that no authority exists allowing imputation of income for the purpose of calculating spousal support and that part holding equalization of income is inappropriate in this case. I concur in the remaining parts of the opinion, but would affirm the judgment of the trial court.

[¶ 33] Gerald and Cecelia were married 33 years before divorcing and in dispute is the ultimate amount of the trial court's award of permanent spousal support to Cecelia. Gerald worked as superintendent at Parshall High School for the 1999–2000 school year and earned a total compensation package of $65,000. He voluntarily quit his position at the end of the school

year in anticipation of a "state job" as a grant administrator. However, the "state job" never materialized and he enrolled at North Dakota State University ("NDSU") in August of 2000 to pursue a Specialist's Degree in Educational Leadership, which he obtained in May of 2002.

[¶ 34] During his advanced degree education, Gerald, who was then 56 years of age, began drawing from his teacher's retirement fund. Gerald testified the salary range for an Education Leader in this area of the country is $50,000 to $90,000. He testified at trial that he had already applied for forty positions region-wide and had not been able to secure one.

[¶ 35] The trial court found that while attending NDSU, Gerald was receiving $692 a month as a Graduate Teaching Assistant, $800 a month as a part-time salesperson at Marshall Fields, and $2,273.86 a month of retirement funds. Gerald testified he was sending Cecelia $1,050 a month. The trial court also found Gerald had voluntarily relinquished his superintendent position and that the decision was not a "truly joint decision" by Gerald and Cecelia. The trial court concluded Gerald's actions constituted economic fault. Additionally, the trial court determined Gerald spent $22,704.18 of the proceeds from annuities, in part, on costs associated with obtaining his advanced degree from NDSU. Accordingly, marital funds were used by Gerald to obtain his advanced education.

[¶ 36] Cecelia is 58 years old and earns a salary of $24,500 a year as an elementary teacher plus $300 to $350 a month as a part-time worker at the Parshall Cenex Convenience Store. The trial court found that Cecelia supported Gerald's career advancement to the detriment of her own. They moved nine times to advance Gerald's career with little or no consideration for Cecelia's teaching career. Due to the frequent moves, Cecelia could not build her retirement, and what retirement she did have, was invaded on four separate occasions to help pay moving expenses or to pay for Gerald's advanced education. The trial court concluded that Cecelia is a disadvantaged spouse and is entitled to spousal support, but declined to set the amount until Gerald finished at NDSU and obtained full-time employment and, "in any event (i.e., whether Gerald obtains full-time employment or not) ... no later than *October 15, 2002.*"

[¶ 37] On October 15, 2002, Cecelia requested that the trial court review the spousal support award and alleged Gerald had a greater ability to pay than he did at the time of trial. On review, the trial court found that Cecelia's needs have become even more pronounced since the divorce judgment. It also found that "[d]espite a concerted and good faith attempt ...," Gerald has come up empty in his job search, "... *at least in the field of school administration.*" (Emphasis added.) The trial court further found:

Realistically, Cecelia cannot wait any longer to begin receiving support from Gerald. Recognizing that: 1. Gerald *voluntarily* gave up a $56,000.00 per year (plus benefits) superintendent's position at Parshall High School in order to obtain his advanced degree; 2. the salary range for an individual possessing this degree is $50,000.00 to $90,000.00; and, 3. Gerald's present earnings are significantly less than prevailing amounts earned in the community (of Bismarck, ND) by persons with similar work history and occupational qualifications, Gerald is "underemployed"—— and equity dictates that the Court impute annual income of $50,000.00 to Gerald in calculating his spousal support obligation. When this is done, it can readily be seen that there is a substan-

tial disparity between the incomes of Cecelia and Gerald———a disparity which the property division ordered by the Court did not ameliorate and which the Court believes *cannot* be· readily adjusted by rehabilitative support given Cecelia's circumstances.

[¶ 38]  Our Court has held that the trial courts must consider the *Ruff–Fischer* guidelines in determining both the amount and duration of spousal support. *Sommer v. Sommer*, 2001 ND 191, ¶ 9, 636 N.W.2d 423. The factors include:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station ·in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* (citation omitted).

[¶ 39]  The trial court in this case very carefully considered all the *Ruff–Fischer* factors including the needs of each party and the ability of the supporting spouse to pay. The trial court imputed income of $50,000 to Gerald based on Gerald's testimony that the salary range for an individual with his degree was $50,000 to $90,000 and that Gerald last earned a total compensation package of $65,000.

[¶ 40]  The majority opinion states that spousal support awards are to be made in consideration of need and ability to pay, without ever mentioning the *Ruff–Fischer* guidelines; that there is no authority to impute income; and that even if it were allowed the trial court found Gerald made a good faith attempt to obtain employment. The majority opinion overlooks that the trial court found Gerald had "volun-

tarily" quit his job and that this act constituted economic fault. The majority opinion also overlooks that the trial court noted Gerald may need to find full-time employment in another field and that he made no attempt to do this. With regard to Gerald's good faith attempt to find a job, the trial court clearly referenced only Gerald's attempt to find a school administration job as being made in "good faith." Implicitly the trial court found Gerald was "voluntarily" underemployed, and after having given him one year to resolve his employment status, the court. imputed income.

[¶ 41]  A number of jurisdictions have found that where a party has voluntarily reduced his income, the court may impute income to arrive at an amount for spousal support. *See, e.g., Moore v. Moore,* 242 Mich.App. 652, 619 N.W.2d 723, 724–25 (2000) (citing *Healy v. Healy,* 175 Mich. App. 187, 437 N.W.2d 355 (1989)) (holding that a court can consider a voluntary reduction of income to determine the proper amount of alimony, and that if a court finds a party voluntarily reduced the party's income, the court may impute additional income to arrive at an appropriate alimony award); *Weller v. Weller,* 2002 Ohio 7125, ¶ 47, 2002 WL 31862681, *8 (Ohio Ct.App.2002) (quoting *Motycka v. Motycka,* 2001 Ohio 2162, 2001 WL 688886 *14) (holding that a trial court has the discretion to impute income to parties for purposes of spousal support, "even if it is determined that a party has no income"); *Cox v. Cox,* 877 P.2d 1262, 1267 (Utah Ct.App.1994) (holding that ·after first determining a spouse is voluntarily unemployed or underemployed, it is appropriate to impute income) (citations omitted); *Grady v. Grady,* 295 Ark. 94, 747 S.W.2d 77, 78–79 (1988) (holding, in the proper circumstances, a trial court may impute income to a supporting spouse who voluntarily changes employment); *Grable v.*

*Grable,* 307 Ark. 410, 821 S.W.2d 16, 20 (1991) (holding that a trial court may impute income); *In re Marriage of Stephenson,* 39 Cal.App.4th 71, 46 Cal.Rptr.2d 8, 14 (1995) (holding that if a "supporting spouse elects to retire early and to not seek reasonably remunerative available employment under the circumstances, then the court can properly impute income to that supporting spouse ...."); *Kovar v. Kovar,* 648 So.2d 177, 178 (Fla.Dist.Ct. App.1994) (holding that when a supporting spouse voluntarily reduces his income, it is in the trial court's discretion to impute income); *Bronson v. Bronson,* 793 So.2d 1109, 1111 (Fla.Dist.Ct.App.2001) (same); *In re Marriage of Carrick,* 560 N.W.2d 407, 410 (Minn.Ct.App.1997) (holding that a trial court may impute a party's income to set maintenance, if it first finds that the party was underemployed in bad faith); *In re Marriage of Warwick,* 438 N.W.2d 673, 677 (Minn.Ct.App.1989) (extending earning capacity determination as an appropriate measure of income from child support to spousal support and concluding the rationale for child support is persuasive for maintenance).

[¶ 42] In the present case, the trial court did not err in imputing income where it found Gerald was voluntarily underemployed; had only attempted a good faith search for employment as a school superintendent and not for other full-time employment; and the imputed amount of income was within the range of Gerald's testimony as to what he could earn as well as the history of his earnings.

[¶ 43] To the extent that the majority opinion stands for the proposition that equalization of income is never appropriate when setting spousal support, I dissent. We have stated that "[a] valid consideration in awarding spousal support is balancing the burden created by divorce." *Marschner v. Marschner,* 2001 ND 4, ¶ 10,

621 N.W.2d 339. We also have stated that "[r]elevant to a spousal support determination is the distribution of marital property, the liquid nature of the property, and the income-producing nature of property." *Id.* at ¶ 13. In this case, the parties net marital estate was minimal being only $38,885. Here, the evidence is that the award of $14,000 in the AG Edwards Account had been reduced to $7,000 and would provide little income to Cecilia.

[¶ 44] Cecilia significantly contributed to Gerald's increased earning ability over a period of 33 years. Cecilia's earning ability will never approach Gerald's. Our Court has stated that a valid consideration in an award of spousal support is:

whether there is a need to *equitably* balance the burdens created by the divorce where the parties cannot maintain the same standard of living apart as they enjoyed together. *See Wald v. Wald,* 556 N.W.2d 291, 297 (N.D.1996) ("We recognize a court must balance the burden created by a divorce when it is impossible to maintain two households at the pre-divorce standard of living."); *Wiege v. Wiege,* 518 N.W.2d 708, 712 (N.D.1994) ("The trial court's award of permanent support, combined with the rehabilitative support, *equitably* shares the overall reduction in the parties' separate standards of living and is not clearly erroneous.") (internal quotation marks omitted); *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992) ("Continuance of a standard of living is a valid consideration in spousal support determinations, *e.g., Bagan v. Bagan,* 382 N.W.2d 645 (N.D.1986), as is balancing the burdens created by the separation when it is impossible to maintain two households at the pre-divorce standard, *e.g., Weir v. Weir,* 374 N.W.2d 858 (N.D. 1985).").

*Sommer,* 2001 ND 191, ¶ 10, 636 N.W.2d 423 (emphasis added).

[¶ 45] Although, as in property division, equitable does not need to mean equal, equitable can mean equal. In *Glander v. Glander,* 1997 ND 192, ¶¶ 17, 18, 569 N.W.2d 262, our Court upheld an equalization of income between divorcing spouses. We noted that some jurisdictions reject equalization of income while others "have approved indefinite spousal support that resulted in equalizing post-divorce income." *Id.* at ¶ 17. Our Court concluded that "[w]hile arbitrary equalization of income between parting spouses would be questionable, we conclude the circumstances here justified it. In determining support, a court must 'balance the burden created by a divorce when it is impossible to maintain two households at the pre-divorce standard of living.' " *Id.* at ¶ 18 (citations omitted).

[¶ 46] In *Riehl v. Riehl,* 1999 ND 107, ¶ 17, 595 N.W.2d 10, our Court stated "[w]hile we have not endorsed the 'equalization of income between divorcing spouses,' (citation omitted) we conclude the period of spousal support in this case does not adequately address the burdens of the divorce." We reversed and remanded for the trial court to consider whether permanent spousal support would be equitable to offset the permanent economic disadvantage suffered by the wife in that case. *Id.* at ¶¶ 19, 20.

[¶ 47] I believe the trial court did not clearly err in equalizing the incomes through an award of spousal support under the facts and circumstances of this case. If Gerald wishes to decrease his spousal support payments upon his retirement, he may bring a motion for modification of the amount at that time. *See Sommer,* 2001 ND 191, ¶ 18, 636 N.W.2d 423.

[¶ 48] I respectfully dissent and would affirm the judgment of the trial court.

[¶ 49] MARY MUEHLEN MARING