2005 ND 123

**Lana K. EBACH, Plaintiff
and Appellee**

v.

**Donald M. EBACH, Defendant
and Appellant.**

No. 20040306.

Supreme Court of North Dakota.

July 13, 2005.

Patricia E. Garrity, Bair, Bair & Garrity, LLP, Mandan, ND, for plaintiff and appellee.

Benjamin C. Pulkrabek, Mandan, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Donald M. Ebach appealed from an order denying his motion to reduce his spousal support obligation to Lana K. Ebach. We conclude the trial court's finding that Donald failed to show a material change in circumstances caused by his early retirement to justify a termination or reduction of his spousal support obligation is not clearly erroneous. We affirm and remand to the trial court for consideration of Lana's request for attorney fees on appeal.

I

[¶ 2] Donald and Lana were divorced on September 16, 1997, after more than 30 years of marriage. At the time of the divorce, Lana was 52 years old, was earning $16,495 annually employed as an eligibility worker with Sheridan County Social Services, and had been diagnosed with multiple sclerosis, an incurable "disease to the nervous system affecting sensory, motor, vision, hearing, and mental capacities." *van Oosting v. van Oosting*, 521 N.W.2d 93, 95 (N.D.1994). Donald was 54 years old and was earning $48,250 annually employed as a service representative with Otter Tail Power Company. The court found "Donald had a knee injury and has high blood pressure but his overall health is good." The court noted that Lana "has had at least five exacerbations of her condition since 1980. While Lana is in relatively good health otherwise, the nature of the disease makes it impossible to predict her future medical condition attributable to [multiple sclerosis]."

[¶ 3] The court found that Donald had a greater earning capacity than Lana, that Lana is less able than Donald to provide for her retirement, and that these factors justified a greater property distribution to Lana. The court awarded Lana a net property distribution of $130,060, and Donald a net property distribution of $127,002. Included in the property distribution was Donald's pension plan with Otter Tail Power which, at the time, had an unknown value. The court explained:

The court adopts the formula described in *Bullock v. Bullock*, 354 N.W.2d 904 (N.D.1984) to determine Lana's share of Donald's pension plan. Lana is entitled to one-half of the share of the pension plan proceeds attributable to the years of marriage. The exact value of Lana's share will not be known until Donald's retirement. It is computed by dividing the number of years during the marriage where Donald was employed by Otter Tail (31 years) by the

total number of years Donald works for Otter Tail. That percentage is then multiplied by the total value of the pension plan at retirement and Lana will receive one-half of that amount. Donald is entitled to the remainder of the pension plan proceeds.

[¶ 4] Because Lana's income from work and her retirement benefits would be less than Donald's, and because of Lana's "precarious" medical condition, the trial court further ordered that Donald pay Lana permanent spousal support of $750 per month "until Lana dies or remarries." The court noted that spousal support may be modified upon a showing of a material change in circumstances, and that a "deterioration in Lana's medical condition or Donald's retirement would, in this court's opinion, constitute such a change of circumstances."

[¶ 5] In August 2004, Donald moved to modify his spousal support obligation because he decided to retire from Otter Tail Power effective February 1, 2005 at the age of 62, and the "Court said when issuing its original opinion that ... spousal support could be reconsidered when [Donald] retires." Donald, whose gross earnings from Otter Tail Power were $65,769 annually at the time of his retirement, argued his spousal support payments should terminate because he would now be receiving only $1,243 per month from his Otter Tail Power pension and $1,270 per month in social security benefits. Donald argued Lana would also begin receiving either $862 or $907 per month from his retirement plan, depending upon which option she chose. Lana would receive the higher monthly payment if she chose the option under which her beneficiaries would receive no benefits upon her death. Donald also argued, "because [Lana] will be making more monthly income than [Donald] after [Donald] retires, the Court

would be justified in allowing only $750.00 of the retirement [Lana] gets from [Donald's] retirement to be paid to her, and the rest to [Donald] because his monthly income is less than [Lana's] after he retires." Lana responded and pointed out that Donald had remarried and his spouse earns more than $2,000 per month while Lana has not remarried and her employment income has increased minimally since the divorce. She also argued that Donald was seeking early retirement, that he was in good health and capable of continuing to work at either Otter Tail Power or at other employment, and that she was having bladder problems related to her multiple sclerosis that were becoming worse.

[¶ 6] A hearing was held before a judge other than the judge who presided over the parties' divorce proceeding. During the hearing, Donald testified that he has diabetes, high blood pressure, high cholesterol, and hearing and dental problems. He testified he was having problems performing his meter-reading duties at Otter Tail Power because of the amount of walking required in cold weather. Donald further testified that, because Lana cannot receive any of his retirement benefits until he actually retires, Lana would receive approximately $5,400 more if he retired at age 62 rather than at age 65, even if the spousal support payments were terminated.

[¶ 7] The trial court denied Donald's motion, reasoning:

Donald has an obligation to support his ex-spouse. He has the ability to work until he is at the customary retirement age of 65. His health is average for a person of his age. He has failed, in the very least, to demonstrate how his health problems would prevent him from performing his job. He is financially secure, having a pension and tapping his social security benefits. The potential

harm to Lana in losing support is much more severe than the selfish benefit it would give Donald.

The Court finds there has not been a showing of any material change in circumstances. The only material change was self-induced by Donald. He has not proved his burden to this Court that the early retirement was reasonable and done in good faith.

## II

[¶ 8]   On appeal, Donald argues the trial court erred in denying the motion to reduce his spousal support obligation.

[¶ 9]   When there has been an initial award of spousal support, the trial court retains jurisdiction and may modify the award at least as long as support continues. *Meyer v. Meyer*, 2004 ND 89, ¶ 5, 679 N.W.2d 273. The party seeking modification of spousal support bears the burden of showing a material change in circumstances warrants modification. *Quamme v. Bellino*, 2002 ND 159, ¶ 14, 652 N.W.2d 360. A material change in circumstances is something that substantially affects the parties' financial abilities or needs, and the reasons for the changes in income must be examined as well as the extent to which the changes were contemplated by the parties at the time of the initial decree. *Schmalle v. Schmalle*, 1998 ND 201, ¶ 12, 586 N.W.2d 677. Not every financial change in circumstances justifies a modification, and if a change is self-induced, no modification is warranted. *Schmitz v. Schmitz*, 2001 ND 19, ¶ 8, 622 N.W.2d 176.

[¶ 10]   A trial court's determination of whether there has been a material change in circumstances is a finding of fact and will not be reversed on appeal unless it is clearly erroneous. *Gibb v. Sepe*, 2004 ND 227, ¶ 7, 690 N.W.2d 230. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or this Court, upon review of all the evidence, is left with a definite and firm conviction a mistake has been made. *Id.*

## A

[¶ 11]   In *Sommer v. Sommer*, 2001 ND 191, ¶ 20, 636 N.W.2d 423, this Court said "voluntary retirement by a supporting spouse that results in a material change in circumstances may, under some circumstances, be a valid basis for modification of spousal support." In *Sommer*, at ¶ 17, the appellant argued the trial court erred by not providing in the divorce judgment for the elimination or reduction of spousal support upon his retirement. We held the appellant was not precluded from bringing a motion for modification of spousal support based upon his voluntary retirement, but the trial court did not err in refusing to provide in the divorce judgment for an automatic reduction. *Id.* at ¶¶ 20, 21. We left "open the secondary question of what a supporting spouse must show to actually succeed on a motion for modification based on the supporting spouse's voluntary retirement until this issue is presented to us." *Id.* at ¶ 20 n. 2.

[¶ 12]   The parties and the trial court mainly relied upon the case law cited in *Sommer*, 2001 ND 191, ¶ 20, 636 N.W.2d 423, in assessing whether Donald's voluntary retirement justified a modification of spousal support. *See Pimm v. Pimm*, 601 So.2d 534, 537 (Fla.1992); *In re Marriage of Smith*, 77 Ill.App.3d 858, 33 Ill.Dec. 332, 396 N.E.2d 859, 863–64 (1979); *Smith v. Smith*, 419 A.2d 1035, 1038 (Me.1980); *Silvan v. Sylvan*, 267 N.J.Super. 578, 632 A.2d 528, 530 (App.Div.1993); *Deegan v. Deegan*, 254 N.J.Super. 350, 603 A.2d 542, 545–46 (App.Div.1992). These courts have adopted a totality-of-the-circumstances

analysis and have set forth similar non-exclusive factors for consideration:

> There are a variety of factors which should be considered in analyzing whether such changed circumstances do, in fact, exist as would justify a modification of [spousal support]. A court may consider, for instance, the age gap between the parties; whether at the time of the initial [spousal support] award any attention was given by the parties to the possibility of future retirement; whether the particular retirement was mandatory or voluntary; whether the particular retirement occurred earlier than might have been anticipated at the time [spousal support] was awarded; and the financial impact of that retirement upon the respective financial positions of the parties. It should also assess the motivation which led to the decision to retire, i.e., was it reasonable under all the circumstances or motivated primarily by a desire to reduce the [spousal support] of a former spouse. A court may also wish to consider the degree of control retained by the parties over the disbursement of their retirement income, e.g., the ability to defer receipt of some or all. It may also wish to consider whether either spouse has transferred assets to others, thus reducing the amount available to meet their financial needs and obligations.

*Silvan*, 632 A.2d at 530. In *Deegan*, 603 A.2d at 546, the court added:

> [E]ven in a case in which the retiring spouse has been shown to have acted in good faith and has advanced entirely rational reasons for his or her actions, the trial judge will be required to decide one pivotal issue: whether the advantage to the retiring spouse substantially outweighs the disadvantage to the payee spouse. Only if that answer is affirmative, should the retirement be viewed as a legitimate change in circumstances warranting modification of a pre-existing support obligation.

*See also Pimm*, 601 So.2d at 537 (court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire, and the needs of the receiving spouse and the impact a termination or reduction of spousal support would have on him or her); *In re Marriage of Smith*, 33 Ill.Dec. 332, 396 N.E.2d at 863 (whether spouse may voluntarily retire depends on circumstances of each case, including the age, health of the party, the motives in retiring, the timing of the retirement, the ability to pay support even after retirement, and the ability of the other spouse to provide for himself or herself); *Smith*, 419 A.2d at 1038 (same).

[¶ 13] We conclude the trial court properly focused on these factors in deciding whether there was a material change in circumstances justifying a reduction of spousal support in this case.

## B

[¶ 14] Donald argues the trial court, in assessing whether his spousal support obligation should be terminated or reduced, erred in failing to consider that the $862 or $907 monthly payments Lana would receive from his pension would constitute income to her.

[¶ 15] We agree with Donald that spousal support is based upon the parties' needs and ability to pay, and that the need for spousal support and the ability to pay support may be dependent upon the amount and nature of property distributed to each former spouse. *E.g., Ingebretson v. Ingebretson*, 2005 ND 41, ¶ 18, 693 N.W.2d 1. Although the "income" Lana would receive from her share of Donald's pension certainly relates to her needs, we

do not view the trial court's order as concluding the court did not consider in its analysis the amount of the share of the pension Lana would receive. Rather, Donald had proposed to the trial court that, not only should spousal support be terminated, but Lana's share of the pension should be reduced to $750 per month with the rest of her share given to Donald because his monthly income will be less than her income after he retires.

[¶ 16] Pensions and retirement benefits are marital assets subject to equitable distribution by the court. *Striefel v. Striefel*, 2004 ND 210, ¶ 10, 689 N.W.2d 415. While a court has continuing jurisdiction to modify spousal support, a court does not retain continuing jurisdiction to modify a final property distribution. *Kopp v. Kopp*, 2001 ND 41, ¶ 5, 622 N.W.2d 726. The trial court properly applied these principles in addressing Donald's proposal:

> Donald requested that Lana's share of the Otter Tail pension funds be reduced to $750. His view of the pension plan is that it amounts to spousal support, it is not. The pension fund is property. While spousal support and property should be considered in tandem by the trial court in deciding how or whether to divide/grant it, they are not the same thing. *Sommer*, ¶ 16. Lana was awarded part of the pension plan because federal law requires it and the trial court ordered it in the property division portion of the judgment. The trial court also ordered spousal support, which is determined in tandem with the property distribution but is effectively separate from property.

We conclude the trial court's decision was not induced by an erroneous view of the law.

### C

[¶ 17] Donald argues the trial court erred in failing to either terminate or reduce his spousal support obligation.

[¶ 18] The trial court noted that, although the judge in the divorce action said Donald's retirement would constitute a change in circumstances meriting a modification of spousal support, Donald said he contemplated retiring at age 65 in a brief filed in those proceedings. The court also found Donald's credibility to be suspect because he did not mention his health concerns in his initial brief in support of the motion to reduce spousal support. The court contrasted Donald's health concerns with Lana's multiple sclerosis, which "can flare up and is unpredictable," and the secondary effects of the disease Lana was experiencing. The court expressed concern that if Lana's multiple sclerosis relapsed, Lana could possibly be unable to work "and would be living at the poverty level." Lana had undergone surgery in 2003 to remedy a blockage of her lower intestine and to remove her gallbladder and appendix. In 2004, Lana underwent bladder and back surgeries. The court found Donald's "health is average for a person of his age" and that he failed "to demonstrate how his health problems would prevent him from performing his job."

[¶ 19] The court further found that Donald was "financially secure." Donald would receive more than $2,500 in pension and social security benefits after he retired. Donald owns stock in Otter Tail Power and has a 401(k) fund account, but he claims he is unaware of their value. Lana stated in an affidavit that Donald would likely seek other employment after retiring because "[h]e is not the type of person to sit and do nothing and has always moonlighted even when working for Otter Tail." Donald did not claim that he

would be unable to pay the spousal support after his early retirement, but only that spousal support should be terminated or reduced, because Lana would be receiving more income than he would receive after he retired. Lana is not working full-time because her employer has a reduced caseload. Lana's gross income was $1,647 per month at the time of these proceedings, and after deductions for taxes and her deferred compensation plan, she received $742 per month in net pay. Lana will not turn 62 years old until 2006, at which time she would be eligible to retire and will be vested in her employer's retirement plan. Documentation established that if Lana retired at age 62, she would receive $636 per month in social security benefits and $118.85 per month from her employer's retirement plan. Lana claimed her monthly expenses were $2,133 per month.

[¶ 20] The record reflects that the trial court considered all of the relevant factors and found Donald's early retirement was not in good faith and the "potential harm to Lana in losing support is much more severe than the selfish benefit it would give Donald." We conclude the trial court's finding that Donald failed to show a material change of circumstances justifying a termination or reduction in spousal support is not clearly erroneous.

### D

[¶ 21] Lana requests an award of costs and attorney fees on appeal. Although the trial court and this Court have concurrent jurisdiction to award attorney fees for an appeal in divorce proceedings, we prefer the trial court to consider whether attorney fees are appropriate. *Dvorak v. Dvorak*, 2005 ND 66, ¶ 33, 693 N.W.2d 646. We therefore direct the trial court to consider whether an award of attorney fees to Lana is appropriate for this appeal.

### III

[¶ 22] We affirm the order and remand to the trial court for consideration of Lana's request for attorney fees on appeal.

[¶ 23] CAROL RONNING KAPSNER and MARY MUEHLEN MARING. JJ., concur.

[¶ 24] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.

VANDE WALLE, Chief Justice, concurring.

[¶ 25] I reluctantly concur in the result and write to express some of my misgivings with regard to the majority opinion as well as that of the trial court.

[¶ 26] It is not entirely clear to me whether Lana is better off drawing a portion of Donald's retirement rather than spousal support. It is clear to me she presently would make more by drawing on the retirement than receiving spousal support. I do not know, however, if drawing now rather than when Donald would reach 65 affects the ultimate amount she might be expected to draw over her lifetime. In any event she is now receiving both the retirement and spousal support and it might appear that the reason for the decision is to punish Donald for retiring at age 62 rather than age 65.

[¶ 27] When the divorce decree was issued in this case it clearly stated that spousal support may be modified upon a change of circumstances and that Donald's retirement would, in the court's opinion, constitute a change of circumstances. Apparently the presumption is that people retire at age 65 and not at age 62, although

that is also not entirely clear to me from this record. A person can retire at age 62 and draw social security at a reduced rate. That is often referred to as "early retirement." Under recent changes to social security a person under a certain age may have to work beyond age 65 to receive full social security retirement. In any event, although I do not believe retirement at age 62 is unusual, I recognize that in the original divorce case Donald said he contemplated retiring at age 65 and, for the purposes of this case, that may have set a standard to which he should be held absent other circumstances.

[¶ 28] I also agree with the majority's adoption of a totality-of-the-circumstances analysis of the evidence in a motion to modify spousal support. However some of the rhetoric of the majority opinion as well as the trial court, gives me concern that an argument will be made that because of Lana's condition, Donald could be expected to work beyond age 65. I would not agree with that argument. If age 65 is "normal" retirement, retirement by a person of that age is a change in circumstances, even if it is anticipated. More likely, notwithstanding the divorce court's statement about Donald's retirement constituting a change in circumstances, this is simply the prelude to Lana's request for permanent spousal support when Donald does retire, even at age 65. Absent subsequently occurring circumstances, to the extent the majority opinion may be read to support that objective, I do not join it.

[¶ 29] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, J., concur.