144 A.3d 916

GORDON MUELLER, PLAINTIFF, v. ROSEMARY
S. MUELLER, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Ocean County

Decided: April 22, 2016

*Gordon Mueller*, plaintiff pro se.

*Jay Sendzik* for defendant (*Sendzik & Sendzik, P.C.*, attorneys).

## OPINION

L.R. Jones, J.S.C.

Under New Jersey's recently amended alimony statute, a party may seek to terminate or modify his or her spousal support obligation based upon an actual or "prospective" retirement. *N.J.S.A.* 2A:34–23(j)(1)–(3). What, however, does the term, "prospective retirement" actually mean?

For the reasons set forth in this opinion, the court holds the following:

1) The amended alimony statute does not set a specific minimum or maximum time period for obtaining an advance ruling on a prospective retirement and its effect upon an existing support obligation. The spirit of the amended statute, however, inherently contemplates that the prospective retirement will take effect within reasonable proximity to the application itself, rather than several years in advance of same.

2) In the present case, an application by an obligor to terminate alimony based upon a prospective retirement, filed five years before the applicant's anticipated retirement date, is brought too far in advance for the court to undertake an objectively reasonable analysis of the application, as contemplated under the statute. In order for a court to reasonably consider the issue of termination or modification of alimony based upon a prospective rather than actual retirement, the court logically needs to review reasonably current information, relative to the time period of the proposed retirement itself, in order to appropriately analyze the various factors and comparative equities set forth for consideration under the amended statute.

3) An order for prospective termination or modification of alimony based upon reaching a certain retirement age inherently contemplates that the obligor not only reaches a specific age, but also actually retires at that point. If an obligor reaches the statutory retirement age, but does not actually retire at that point, then the "retirement age" provisions triggering a potential termination or modification of alimony are inapplicable until such time as the obligor actually retires or submits

an application regarding a prospective retirement in the near future, for the court's consideration under *N.J.S.A.* 2A:34–23(j).

## FACTUAL BACKGROUND

Plaintiff and defendant married in 1986, and divorced in 2006. Pursuant to the parties' matrimonial settlement agreement, plaintiff agreed to pay defendant $300 per week in permanent alimony. The agreement contained no provision expressly addressing retirement and/or its relationship to plaintiff's ongoing permanent alimony obligation.

Plaintiff now files a post-judgment motion regarding his alimony obligation under New Jersey's recently amended alimony statute, *N.J.S.A.* 2A:34–23(j).[1] Specifically, he asserts that he is now fifty-seven years old and that he plans to retire in five years when he turns sixty-two and would be entitled to retire and receive his full employment-related pension benefit. He currently seeks a court order prospectively holding that his alimony obligation will in fact terminate upon his retirement in five years. Plaintiff asserts that if his alimony does not end at that time, he will financially be unable to afford to retire at such age.

Defendant cross-moves for an order denying plaintiff's motion for prospective termination of alimony.

## LEGAL ANALYSIS

On September 10, 2014, the New Jersey Legislature formally amended the state's alimony statute, *N.J.S.A.* 2A:34–23, to include the establishment of statutory standards for consideration of termination or modification of one's alimony obligation based upon actual or prospective retirement. The effective date of the statute was September 10, 2014. The new retirement sections are *N.J.S.A.* 2A:34–23(j)(1), which covers termination of an alimony obligation established in an order entered after September 10, 2014; *N.J.S.A.*

---

[1] Plaintiff has also requested other relief which is unrelated to alimony and outside the scope of this opinion.

2A:34–23(j)(2), which covers termination of alimony based upon early retirement; and *N.J.S.A.* 2A:34–23(j)(3), which covers termination of an alimony obligation established in an order entered before September 10, 2014. *See Landers v. Landers*, 444 *N.J.Super.* 315, 133 *A.*3d 637 (App.Div.2016). Specifically, (j)(3) provides that where there is an existing final order or enforceable written agreement establishing an alimony obligation prior to the effective date of September 10, 2014, "the obligor's reaching full retirement age as defined in this section shall be deemed a good faith retirement age." "Full retirement age" means the age at which a person is eligible to receive full retirement benefits under section 216 of the federal Social Security Act (42 *U.S.C.* § 416). *N.J.S.A.* 2A:34–23(n).

At such point, the court may equitably weigh this factor against a series of additional statutory factors to determine whether alimony should be terminated, modified, or left intact. In making its determination, the court may consider various points, including but not limited to the ability of the obligee to have saved adequately for retirement. The following additional factors should also be considered to determine whether the obligor has demonstrated by a preponderance of the evidence that modification or termination of alimony is appropriate:

(a) The age and health of the parties at the time of the application;

(b) The obligor's field of employment and the generally accepted age of retirement for those in that field;

(c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;

(d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

There are both similarities and differences between the statutory provisions and criteria for considering termination of an alimony obligation established under a final judgment or order entered before September 10, 2014, ((j)(3)) and a final judgment or order entered after September 10, 2014, ((j)(1)). Most particularly, the statutory language in each section implicitly references the reaching or approaching of retirement age as a triggering event for a potential application regarding the status of an alimony obligation. For a pre-September 10, 2014, alimony order, (j)(3) provides that "the obligor's reaching full retirement age as defined in this section shall be deemed a good faith retirement age" with the burden of proof remaining with the payor to demonstrate why alimony should terminate." For a post-September 10, 2014, alimony order, however, (j)(1) provides that "there shall be a rebuttable presumption that alimony shall terminate upon the obligor spouse or partner attaining full retirement age," with the burden of proof shifting to the recipient to demonstrate why alimony should not terminate.

The amended statute also covers scenarios where an obligor wishes to retire earlier than "full retirement age," which is the age when he or she is entitled to receive full social security retirement benefits. When an obligor seeks to retire earlier than "full retirement age," then section (j)(2) applies:

> Where the obligor seeks to retire prior to attaining the full retirement age as defined in this section, the obligor shall have the burden of demonstrating by a preponderance of the evidence that the prospective or actual retirement is reasonable and made in good faith. Both the obligor's application to the court for modification or termination of alimony and the obligee's response to the application shall be accompanied by current Case Information Statements or other relevant documents as required by the Rules of Court, as well as the Case Information Statements or other documents from the date of entry of the original alimony award and from the date of any subsequent modification.

As noted, the language in the amended alimony statute technically authorizes a court to consider an obligor's application for termination or modification of alimony not only upon an actual retirement, but upon a prospective retirement as well. Pursuant to *N.J.S.A.* 2A:34–23(j), if an obligor intends to prospectively retire

but has not yet actually retired, the court may establish the conditions under which the modification or termination of alimony will be effective. If the evidence reflects that an obligor is either actually retiring, or prospectively planning to retire, such evidence may launch the applicable statutory analysis provided under the statute, which may potentially lead to termination or modification of an alimony obligation.

The amendment permitting a court to presently consider an obligor's prospective retirement, as opposed to an actual retirement, is logically designed to avoid placing an obligor in a "Catch 22" financial situation. Specifically, if an obligor is considering the possibility of retirement in the near future, he or she logically benefits from knowing in advance, before making the decision to actually leave the workforce, whether the existing alimony obligation will or will not change following retirement. Otherwise, if the obligor first retires and unilaterally terminates his or her primary significant stream of income before knowing whether the alimony obligation will end or change, then the obligor may find him/herself in a precarious financial position following such voluntary departure from employment if the court does not terminate or significantly reduce the existing alimony obligation.

For this reason, when an obligor reasonably approaches retirement age, and files a motion setting forth a specific proposed plan for a prospective and projected retirement in the near future, a court may now address and consider the merits of same under the amended alimony statute, and render a ruling regarding a proposed termination or modification of alimony, to take effect upon the obligor's actual retirement in accordance with the proposed plan.

As noted, the statute does not establish or address specific time periods for filing an advance motion based upon a prospective retirement. In the present case, plaintiff brings an application to terminate his alimony based upon a prospective retirement in five years' time. Technically, both sections (j)(2) and (j)(3) of the amended alimony statute are applicable to plaintiff's motion. First,

plaintiff's alimony obligation arises from a judgment of divorce entered well prior to September 10, 2014, thereby invoking (j)(3). Second, plaintiff plans to retire at age sixty-two, which he represents is the age when he maximizes his benefit under his work-related pension. Yet, his full retirement age for receipt of his full social security retirement benefits is 66 years and 8 months, meaning that plaintiff's desire to retire at age sixty-two is actually an early retirement under the statute ((j)(2)). Notably, one of the express statutory factors for a court to consider on the issue of terminating or modifying alimony under the amended statute based upon an obligor's actual or prospective retirement is "the age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits." *N.J.S.A.* 2A:34–23(j)(2)(c), 3(c).

Due to the relative newness of the statutory revisions, there is little post-amendment guidance presently available regarding analysis of a litigant's application to terminate alimony based upon a prospective rather than actual retirement. Canons of legislative construction, however, instruct that language in a statute should be interpreted in a common sense manner, consistent with the plain meaning of the text. *See State ex rel. K.O.*, 217 *N.J.* 83, 91–92, 85 *A.*3d 938 (2014); *State v. Carreon*, 437 *N.J.Super.* 81, 96 *A.*3d 305 (App.Div.2014). Further, the New Jersey Supreme Court has held that courts should strive to construe written statutes, rules and laws in a manner that avoids an absurd or illogical result, even when same appears to be dictated by a literal interpretation of the language. *Hubbard ex rel. Hubbard v. Reed*, 168 *N.J.* 387, 392–93, 774 *A.*2d 495 (2001); *see N.J.S.A.* 1:1–1. When there is a legitimate question or ambiguity over whether the Legislature intended for an enactment to cover a certain situation, it is sensible and appropriate for a court to presume that the Legislature at all times intended and desired to act fairly, equita-

bly, and reasonably. *Cameron v. Cameron*, 440 *N.J.Super.* 158, 170, 111 *A*.3d 733 (Ch.Div.2014).

■ As regarding judicial consideration of a prospective rather than an actual retirement, this court finds that a reasonable interpretation of the amended alimony statute is one that allows a court to order a prospective termination or modification of alimony based upon future, prospective retirement, when (a) the prospective retirement will take place in the near future, rather than many years after the actual application, and (b) the applicant presents a specifically detailed, proposed plan for an actual retirement, as opposed to a non-specific, general desire to someday retire. A detailed plan may include, by way of illustration and not limitation, not only a proposed specific date of retirement, but details in terms of the obligor's plan for economic self-support following retirement as well. This information is relevant in considering the financial aspects of the proposed retirement, particularly when dealing with the comparative equities of an application for a termination of an existing support obligation based upon an early retirement rather than at "retirement age."

In the present case, the filing of an application for an advance order terminating alimony in five years' time, based upon a prospective early retirement in 2021, is simply too far in advance of the event for the court to reasonably analyze and consider at this time. Such an application inherently invites significant speculation, and implicitly undermines the ability to perform the functional analysis of comparative factors, which is contemplated under the terms of the amended statute itself. Conversely, an application filed significantly closer to the prospective retirement date accommodates a far more thorough consideration of financial and other important factors in real time, while still providing the applicant with a reasonable advance opportunity to submit such application and receive a judicial decision before the proposed retirement actually takes place, and after each party has had a reasonable opportunity to be heard. Otherwise, an application filed years advance of any actual retirement may essentially be nothing more

than a motion to summarily change the terms of an alimony settlement agreement from permanent or open-ended alimony to limited duration alimony, without demonstrating any substantial change in circumstances or necessary grounds for modification under *Rule* 4:50-1. There is nothing in the amended alimony statute that reflects that the Legislature intended or envisioned such a result.

In the present case, plaintiff has not submitted any specific detailed plan to retire in the near future. As noted, he is only fifty-seven years old and by his own admission intends to work at least another five years. While he testifies about a general wish to potentially retire and terminate alimony at age sixty-two, the lack of specificity, or of any detail regarding same, renders impractical, if not impossible, the court's ability to fully consider the application. The five-year gap between the application and the prospective retirement severely restricts the court's ability to effectively consider the request, and/or to fashion any specific conditions for termination or modification of alimony as contemplated under the amended statute.

Presently, plaintiff is nowhere near either retirement or even "early" retirement. His application is premature, even as a "prospective" retirement under the amended alimony statute. Moreover, the reaching or close approaching of an applicable retirement age is not the end but the beginning of a necessary analysis, followed by consideration of multiple important statutory factors.

While the amended alimony statute permits a degree of reasonable prospective adjudication by the court for a prospective rather than actual retirement, an attempt to engage in the necessary statutory analysis several years in advance of such retirement would likely be replete with long-term guesswork. Further, any such effort would essentially ignore the practical reality that the parties' economic situations, health, and other relevant factors may radically change over such a lengthy period of time, before an actual retirement ever actually takes place.

In the present case, plaintiff has a right to seek a termination or further modification of his present alimony obligation, if and when plaintiff has an actual or specific, proposed prospective retirement in the near future. As noted, the amended statute does not set forth any specific minimum or maximum time frames for the filing of such an application, and the court does not interpret the statute so as to imply a definite bright line period, akin to a reverse statute of limitations. *See Kanaszka v. Kunen*, 313 *N.J.Super.* 600, 609, 713 *A*.2d 565 (App.Div.1998) (appellate court rejecting judicial engraftment of a mandatory one-year waiting period under New Jersey's Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25-17 to -35, for a defendant to apply for order vacating a final restraining order). The establishment of absolute minimum or maximum statutory time periods, when applicable, is more appropriate for legislative than judicial creation. *See Kanaszka, supra,* 313 *N.J.Super.* at 609, 713 *A*.2d 565.

That being stated however, the court does note that in the context of this case, plaintiff's motion for advance termination of alimony may be far more suitable for thorough analysis and consideration if brought, for example, approximately twelve to eighteen months before his prospective early retirement, as opposed to five years before the fact. In such circumstance, plaintiff will still have the benefit of an advance ruling before actually retiring, and defendant will have a fair chance to respond. Meanwhile, the court will have the opportunity to consider the comparative positions of the parties and other statutory factors within a closer proximity to the actual retirement. Such an analysis can then take place in a manner that reasonably reduces speculation, and is more fundamentally consistent with the terms, logic and spirit of the amended alimony statute itself.

Finally, the court notes that under a reasonable and logical interpretation of the language in the amended statute, alimony terminates not merely upon chronologically reaching a certain retirement age, but upon whether as a result of attaining such age, the obligor is also actually retiring or specifically planning to

retire from his or her job shortly thereafter. If the statutory intent was to terminate alimony simply upon reaching a certain age, regardless of an accompanying actual or prospective retirement resulting from same, the Legislature could have easily stated so in the statute itself by simply having all alimony obligations terminate upon reaching a particular set age alone, without even mentioning or invoking the word "retirement" at all.

By applying reason and common sense, the court concludes that the legislative intent in the amended alimony statute is to create a mechanism by which a person who is nearing retirement or early retirement age, and who is desirous of actually retiring in the present or near future, may seek a prospective advance ruling regarding potential termination or modification of his or her alimony obligation. The retirement provisions of the amended alimony statute however, may have little practical applicability to a situation such as the present one, where there will be no actual or specific proposed retirement for several years, and where the obligor may in fact continue to work even after reaching retirement age.

For the foregoing reasons, the court denies without prejudice plaintiff's present motion for an order terminating alimony based upon the obligor's wish to retire in five years' time.