# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 67

Donald George Burris,                                              Plaintiff and Appellant

     v.

Luann Burris,                                                        Defendant and Appellee

## No. 20210178

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Donald Hager, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice, in which Justices VandeWalle, Crothers, McEvers, and Tufte joined. Justice Crothers filed an opinion concurring specially.

DeWayne A. Johnston, Grand Forks, ND, for plaintiff and appellant.

Scott D. Jensen, Grand Forks, ND, for defendant and appellee.

# Burris v. Burris
## No. 20210178

**Jensen, Chief Justice.**

[¶1]   Donald Burris appeals from a district court order denying his motion to eliminate or reduce spousal support paid to Luann Burris. Donald Burris asserts the court erred in determining there had not been a material change in circumstances, erred as a matter of law in not applying a 2015 statutory change, erred in not considering his future retirement, and erred awarding Luann Burris attorney's fees. We affirm.

I

[¶2]   Donald Burris and Luann Burris were divorced in 2006. The judgment entered at that time ordered Donald Burris to pay Luann Burris permanent spousal support "continuing until further order of the Court."

[¶3]   In 2020, Donald Burris moved to eliminate or reduce his spousal support obligation. The district court denied the motion. Citing misconduct during the course of litigation on the motion, the court ordered Donald Burris to pay Luann Burris's attorney's fees. The district court did not enter a new judgment or amend the prior judgment. Donald Burris paid the attorney's fees as ordered and initiated this appeal.

II

[¶4]   "The right to appeal is a jurisdictional matter and, even if the parties do not raise the issue of appealability, we must dismiss the appeal on our own motion if we conclude we do not have jurisdiction." *Brummund v. Brummund*, 2008 ND 224, ¶ 4, 758 N.W.2d 735 (citing references omitted). Though neither party raised the issue of appealability of the order, we must first consider whether this appeal is properly before the Court. Luann Burris asserts Donald Burris's appeal related to attorney's fees is moot because he already paid the fees.

A

[¶5] The district court denied Donald Burris's motion to modify or reduce his spousal support obligation. The court issued an order without entering a new judgment or amending the existing judgment.

[¶6] An appeal may be properly before this Court if the order was intended to be final. *See Sanderson v. Walsh County*, 2006 ND 83, ¶ 4, 712 N.W.2d 842 (collecting cases). The right to appeal an order is statutory and governed by N.D.C.C. § 28-27-02. Section 28-27-02(1), N.D.C.C., provides that "[a]n order affecting a substantial right made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken" is appealable. An order denying the elimination or modification of a spousal support obligation affects a substantial right, was the final action required to resolve the pending controversy, and did not require a new or amended judgment. The appeal is properly before this Court.

B

[¶7] Donald Burris paid the attorney's fees awarded to Luann Burris without seeking a stay or posting a bond pending appeal. Luann Burris argues the payment of the attorney's fees renders the issue moot.

[¶8] This Court has held the following regarding mootness created by voluntary compliance with a judgment:

> "We will dismiss an appeal if the issues become moot or academic and no actual controversy is left to be determined." *Ramsey Fin. Corp. v. Haugland*, 2006 ND 167, ¶ 8, 719 N.W.2d 346. "An actual controversy no longer exists when the issue has been rendered moot by a lapse of time, or the occurrence of related events which make it impossible for a court to grant effective relief." *Id*. "[A] party who voluntarily pays a judgment against him waives the right to appeal from the judgment." *Id*. at ¶ 9. "[V]oluntary acquiescence in a judgment also constitutes a waiver of the right to appeal." *Id*. "[P]ayment or acquiescence under coercion or duress does not constitute a waiver." *Id*. at ¶ 10. "[W]hether a judgment has been voluntarily paid depends upon the facts and

2

circumstances of each particular case, and the party seeking dismissal of the appeal bears the burden of showing the judgment was paid voluntarily." *Mr. G's Turtle Mountain Lodge, Inc. v. Roland Twp.*, 2002 ND 140, ¶ 13, 651 N.W.2d 625. "A showing that the judgment has been paid, however, creates a presumption that the payment was voluntary." *Id.*

*Schwab v. Zajac*, 2012 ND 239, ¶ 8, 823 N.W.2d 737. *See also Hoverson v. Hoverson*, 2015 ND 38, ¶¶ 23-25, 859 N.W.2d 390.

[¶9]   Donald Burris paid the attorney's fees as directed in the final appealable order of the district court. The payment itself created a presumption it was made voluntarily and Donald Burris has not directed us to any part of the record which would suggest the payment was involuntary. We conclude Donald Burris's voluntary payment of the award of attorney's fees rendered the issue moot and was a waiver of his right to appeal.

III

[¶10] Donald Burris challenges the district court's factual finding there has not been a material change in circumstances warranting modification or elimination of the spousal support obligation. Our review of a court's decision on a motion to modify spousal support is well-established:

> When the original divorce judgment includes an award of spousal support, the district court retains jurisdiction to modify the award. The party seeking modification of spousal support bears the burden of proving there has been a material change in the financial circumstances of the parties warranting a change in the amount of support. The district court's determination whether there has been a material change in circumstances warranting modification of spousal support is a finding of fact and will be set aside on appeal only if it is clearly erroneous.
>
> A material change is a change that substantially affects the financial abilities or needs of the parties and that was not contemplated by the parties at the time of the original decree. In assessing whether a material change has occurred, the reasons for changes in the parties' income or needs must be examined, as well

3

as the extent to which the changes were contemplated by the parties at the time of the initial decree. Not every change in the parties' financial circumstances justifies modification of spousal support, and no modification is warranted when the change is self-induced.

*Schulte v. Kramer*, 2012 ND 163, ¶ 10, 820 N.W.2d 318 (quoting *Rothberg v. Rothberg*, 2007 ND 24, ¶ 6, 727 N.W.2d 771). This Court does not reweigh evidence or make credibility determinations. *Green v. Swiers*, 2018 ND 258, ¶ 4, 920 N.W.2d 471 (quoting reference omitted). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Schulte*, at ¶ 15 (citing reference omitted).

[¶11] Donald Burris asserts the district court erred in failing to find a material change in circumstances as a result of Luann Burris's retirement, his assertion Luann Burris could invest or spend money from the sale of two condominiums to decrease her debt and minimize her need for support, and his assertion Luann Burris's multiple sclerosis symptoms have decreased. He also argues the court erred in its findings regarding his income and net worth, and its finding related to Luann Burris's rental payment made to her son. The court provided a comprehensive order, provided detailed findings, and compared its current factual findings to the factual findings in the original spousal support determination. Donald Burris's challenge to the factual findings amounts to a request this Court reweigh the evidence on appeal. We conclude the court's findings of fact are not clearly erroneous, there is evidence in the record to support the findings, and we are not left with a definite and firm conviction a mistake has been made. We affirm the factual finding that Donald Burris failed to prove a material change in circumstances warranting modification of his spousal support obligation.

IV

[¶12] Donald Burris testified he intends to retire. He urges this Court to adopt a standard allowing an anticipated retirement to constitute a material change in circumstances.

[¶13] It is not necessary to determine whether an anticipated retirement can ever be sufficient to support a material change in circumstances. Here, Donald Burris testified he has made no effort to sell his business or set a date for retirement. The district court found Donald Burris had made no efforts to retire and also found that any determination of his post-retirement income would be speculative. We conclude the court's findings of fact are not clearly erroneous, there is evidence in the record to support the findings, and we are not left with a definite and firm conviction a mistake has been made. We affirm the factual finding that Donald Burris's undefined future retirement was insufficient to prove a material change in circumstances.

V

[¶14] The judgment provides Donald Burris's spousal support obligation will continue "until further order of the Court." The district court's authority to award spousal support is provided by N.D.C.C. § 14-05-24.1(1), which provides:

> Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for a limited period of time in accordance with this section. The court may modify its spousal support orders.

The current version of this statute, quoted above, became effective on August 1, 2015. The prior version of the statute allowed the district court to order spousal support for "any period of time" rather than "a limited period of time." *See* 2015 N.D. Sess. Laws ch. 124, § 1.

[¶15] Section 1-02-10, N.D.C.C., provides that, "[n]o part of this code is retroactive unless it is expressly declared to be so." Section 14-05-24.1, N.D.C.C., does not provide for retroactive effect. *See e.g.*, *Klein v. Klein*, 2016 ND 153, ¶¶ 4-12, 882 N.W.2d 296 (discussing in detail that section 14-05-

5

24.1(3), N.D.C.C., dealing with spousal support where the supported spouse cohabitates with another, does not apply retroactively).

[¶16] Despite our clear law prohibiting the retroactive application of changes to N.D.C.C. § 14-05-24.1(1), Donald Burris argues our decision in *Kaspari v. Kaspari*, 2021 ND 63, 958 N.W.2d 139, provides for the retroactive application of changes limiting the duration of spousal support. Our decision in *Kaspari* did not consider modification of an existing spousal support award entered prior to 2015. In *Kaspari* we interpreted the changes to N.D.C.C. § 14-05-24.1(1) in the application of the statute to an original spousal support award entered in 2020, after the statutory amendments. Our decision in *Kaspari* is inapplicable to determining whether the change in law is applicable to this case and does not provide any discussion regarding retroactive application of the statute.

[¶17] Following the denial of Donald Burris's motion, no changes were made to the 2006 judgment and the district court did not enter a new award of spousal support. The statute cannot be applied retroactively to modify an existing spousal support obligation, and as such, the change itself is not a material change in circumstances. Because the obligation in this case was not modified, we need not address whether the changes to the statute apply to modifications of obligations existing before the 2015 amendments.

VI

[¶18] The district court's finding there had not been a material change of circumstances was not clearly erroneous, the district court did not err as a matter of law in not applying the 2015 statutory change, the district court's finding regarding future retirement was not clearly erroneous, and the challenge to the award of Luann Burris's attorney's fees was rendered moot by the voluntary payment. We affirm the order of the district court.

[¶19]  Jon J. Jensen, C.J.
        Gerald W. VandeWalle
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte

**Crothers, Justice, specially concurring.**

[¶20] I agree with the result reached by the majority and, based on our precedent and the arguments in this case, with the majority opinion's reasons for the holdings. I write separately because great uncertainty is inflicted on both the obligor and the obligee by the ad hoc application of the need for proof that retirement will cause a material change of circumstances, and if a hearing is granted, proof of a revised need or ability to pay. I also write to note that the underpinnings for our current law on modification of a retiree's spousal support have changed, which in turn should cause us to question whether our rule also should change. *Sack v. Sack*, 2006 ND 57, ¶ 12, 711 N.W.2d 157 ("When precedent and precedent alone is all the argument that can be made to support a court-fashioned rule, it is time for the rule's creator to destroy it." (quoting *Francis v. Southern Pac. Co.,* 333 U.S. 445, 471, 68 S.Ct. 611, 92 L.Ed. 798 (1948) (Black, J., dissenting)).

[¶21] Here, Donald Burris moved to reduce his spousal support obligation because he wanted to retire. He testified he intends to retire but has not sold his business or set a date for retirement. Majority opinion, ¶¶ 12-13. He argued this Court should expand its precedent regarding planned retirement, but did not provide citation to other law that could or should guide us. The majority opinion does not directly address Donald Burris's invitation to modify the law, and instead follows existing law to conclude, "Donald Burris testified he has made no effort to sell his business or set a date for retirement. The district court found Donald Burris had made no efforts to retire and also found that any determination of his post-retirement income would be speculative." *Id.* at ¶ 13. Following precedent, we affirm "the factual finding that Donald Burris's undefined future retirement was insufficient to prove a material change in circumstances." *Id.*

[¶22] Under current law, an obligor who is contemplating retirement must come back to the district court to modify spousal support. As was explained in *Sommer v. Sommer*:

> Should [the obligor spouse] wish to decrease the amount of his spousal support payments upon his retirement, he may bring a motion for modification at that time. In order to modify an award of spousal support, the obligor spouse has the burden of showing a material change in circumstances justifying the modification. A material change is something substantially affecting the financial abilities or needs of a party.

2001 ND 191, ¶ 18, 636 N.W.2d 423 (cleaned up).

[¶23] When an obligor requests reduction of spousal support due to voluntary retirement, a North Dakota district court's answer usually is to provide no predictable avenue for either the obligor or the obligee. Again, this Court's holding in *Sommer* was clear:

> In contrast [to stipulated spousal support], when a supporting spouse has been ordered to pay spousal support based on the trial court's findings, a voluntary change in employment by the supporting spouse that results in lower income may be a valid basis for a modification of spousal support if the change in employment was reasonable and made in good faith. *See Mahoney v. Mahoney,* 538 N.W.2d 189, 192-93 (N.D. 1995) (affirming the trial court's finding of a change in circumstances based on the supporting spouse's decrease in income that occurred when he voluntarily changed employment). Likewise, voluntary retirement by a supporting spouse that results in a material change in circumstances may, under some circumstances, be a valid basis for modification of spousal support. *Cf. id.; see also Pimm v. Pimm,* 601 So.2d 534, 537 (Fla. 1992); *In re Marriage of Smith,* 396 N.E.2d 859, 863-64 (Ill. Ct. App. 1979); *Smith v. Smith,* 419 A.2d 1035, 1038 (Me. 1980); *Silvan v. Sylvan,* 632 A.2d 528, 530 (N.J. Super. Ct. App. Div. 1993); *Deegan v. Deegan,* 603 A.2d 542, 545-46 (N.J. Super. Ct. App. Div. 1992). Thus, our prior holdings . . . would not bar Donald from bringing a motion for modification of spousal support based upon his voluntary retirement.

2001 ND 191, ¶ 20.

[¶24] The *Sommer* Court acknowledged the uncertainty created by this process by making clear that showing a material change of circumstances was a different question than whether the existing support order would be modified:

> While we find that our prior case law would not bar [the obligor spouse] from bringing a motion for modification at his retirement, we leave open the secondary question of what a supporting spouse must show to actually succeed on a motion for modification based on the supporting spouse's voluntary retirement until this issue is presented to us. Courts have relied on a number of different tests to determine when such a motion should be granted. *See* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine,* 29 Conn. L. Rev. 647, 685-87 (1997); Colleen Marie Halloran, *Comment, Petitioning a Court to Modify Alimony When a Client Retires,* 28 U. Balt. L. Rev. 193, 212-29 (1998).

2001 ND 191, ¶ 20 n.2.

[¶25] North Dakota's legal test for modification of spousal support due to voluntary retirement traces its origins to *Sommer* and *Ebach v. Ebach*, 2005 ND 123, 700 N.W.2d 684. Both *Sommer* and *Ebach* relied on cases from Florida, Illinois, Maine and New Jersey. As discussed below, the New Jersey cases have been superseded by a statute providing comprehensive guidelines for prospective and actual retirement and spousal support awards. Massachusetts, Virginia and Oregon also address retirement in their spousal support statutes.

[¶26] In *Ebach* this Court adopted a multifactor "totality of the circumstances" test for determining whether voluntary retirement of the supporting spouse constitutes a material change of circumstances. 2005 ND 123, ¶ 12 (setting forth "non-exclusive factors"). Deciding whether to award spousal support based on multifactor analysis has been subject to separate criticism:

> The law of spousal support under the multifactored statutory approach has been criticized for its arbitrary nature and lack of predictability. *See* Robert Kirkman Collins, *The Theory of*

9

*Marital Residuals: Applying an Income Adjustment Calculus to the Enigma of Alimony*, 24 Harv. Women's L.J. 23, 24-25 (2001). According to the critics, the terms of the statutes embracing multifactored tests for spousal support are not well defined and the standards are so vague that just about any outcome, including those based on the personal preference of an individual judge, may be justified by citation to pliable statutory factors. *See id.*; David A. Hardy, *Nevada Alimony: An Important Policy in Need of a Coherent Policy Purpose*, 9 Nev. L.J. 325, 326 (2009) (characterizing spousal support as "judge-specific, idiosyncratic, inconsistent, and unpredictable"). Some courts have joined the fray. *See, e.g., Bacon v. Bacon*, 819 So.2d 950, 954 (Fla. Dist. Ct. App. 2002) (Farmer, J., concurring specially) ("Broad discretion in the award of alimony is no longer justifiable and should be discarded in favor of guidelines, if not an outright rule."); *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991, 994 (1984) (noting under Pennsylvania law "a total lack of organization with respect to how these principles interact and how they should be applied in order to arrive at an appropriate award of support"). The criticisms are not entirely off the mark, as a multifactored legal test in which all factors are relevant and none are dispositive can be extraordinarily difficult to consistently apply.

*In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015).

[¶27] Setting aside for the remainder of this discussion the advisability of using a multifactor approach, the framework adopted in *Ebach* was taken from *Silvan v. Sylvan*, 632 A.2d 528, 530 and *Deegan v. Deegan*, 603 A.2d 542, 545-46. *See Ebach*, 2005 ND 123, ¶ 12. Both New Jersey cases, and the exact test we adopted in *Ebach*, were superseded by statute in 2014. *See Landers v. Landers*, 133 A.3d 637, 640-42, (N.J. Super. App. Div. 2016). The 2014 change made by the New Jersey Legislature reversed course, and no longer required the supporting spouse to try establishing a material change of circumstances due to retirement. New Jersey instead created a rebuttable presumption that spousal support terminates when the supporting spouse attains full retirement age. *Id.* at 640. The Court in *Landers* explained:

> The 2014 amendments added a new subsection (j) [to N.J. Stat. Ann. § 2A:34-23], which lists objective considerations a judge

must examine and weigh when reviewing an obligor's request to modify or terminate alimony when an obligor retires. L. 2014, c. 42, § 1. The newly enacted provisions state, in pertinent part:

Alimony may be modified or terminated upon the prospective or actual retirement of the obligor.

(1) There shall be a rebuttable presumption that alimony shall terminate upon the obligor spouse or partner attaining full retirement age, except that any arrearages that have accrued prior to the termination date shall not be vacated or annulled. The court may set a different alimony termination date for good cause shown based on specific written findings of fact and conclusions of law.

The rebuttable presumption may be overcome if, upon consideration of the following factors and for good cause shown, the court determines that alimony should continue:

> (a)   The ages of the parties at the time of the application for retirement;
> (b)   The ages of the parties at the time of the marriage or civil union and their ages at the time of entry of the alimony award;
> (c)   The degree and duration of the economic dependency of the recipient upon the payor during the marriage or civil union;
> (d)   Whether the recipient has foregone or relinquished or otherwise sacrificed claims, rights or property in exchange for a more substantial or longer alimony award;
> (e)   The duration or amount of alimony already paid;
> (f)   The health of the parties at the time of the retirement application;
> (g)   Assets of the parties at the time of the retirement application;
> (h)   Whether the recipient has reached full retirement age as defined in this section;
> (i)   Sources of income, both earned and unearned, of the parties;
> (j)   The ability of the recipient to have saved adequately for retirement; and

(k)     Any other factors that the court may deem relevant.

*Id.* at 640-41.

[¶28] Through application of the 2014 law, the New Jersey Superior Court has held the phrase "prospective retirement" means one that will take place in the near future as opposed to many years after the application. *Mueller v. Mueller*, 144 A.3d 916, 922 (N.J. Super. Ct. Ch. Div. 2016). The court also held the prospective retiree should provide a detailed plan for retirement that includes dates and details regarding economic support following retirement. *Id.* To date, this Court only has relied on the 1992 and 1993 New Jersey cases, and has not adopted subsequent interpretations of that State's changed (and changing) law.

[¶29] Because the reason for our rule announced in *Ebach* has changed, either by action of the North Dakota Legislature or upon full briefing in an appropriate case, the time has arrived for us to consider whether the basis for our approach to a support-paying former spouse's retirement also should change. If the Court rather than the legislature ultimately makes that inquiry, consideration should be paid to legal developments in New Jersey and several other states regarding spousal support when the obligor voluntarily retires.

[¶30] The *In re Marriage of Gust* decision from Iowa reviewed then-new legislation in Massachusetts as follows:

> A major impetus to the legislation in Massachusetts was the question of the impact of retirement on spousal support (referred to as alimony in Massachusetts). Rachel Biscardi, *Dispelling Alimony Myths: The Continuing Need for Alimony and the Alimony Reform Act of 2011*, 36 W. New Eng. L.Rev. 1, 30-31 (2014); *see also* Mass. Gen. Laws ch. 208, § 49(f) ("General term alimony orders shall terminate upon the payor attaining the full retirement age."). In 2009, the Massachusetts Supreme Judicial Court declined to create a presumption in favor of the payor's request to be relieved of alimony obligations upon retirement. *See Pierce v. Pierce*, 455 Mass. 286, 916 N.E.2d 330, 344-45 (2009). In response, the Massachusetts legislature amended its alimony statute to provide, among other things, that general (or traditional) alimony should

12

not presumptively continue beyond the payor reaching full retirement age, absent a showing of good cause. *See* Mass. Gen. Laws ch. 208, §§ 49(f), 53(e). The Alimony Reform Act of 2011 also provides that a court may consider alimony for an indefinite period only for marriages of twenty years or more and generally limits support payments to between thirty and thirty-five percent of the difference between the parties' gross incomes at the time of the alimony order, unless there are circumstances warranting deviation. *See* 2011 Mass. Legis. Serv. ch. 124, § 3 (West) (codified at Mass. Gen. Laws ch. 208, §§ 49(c), 53(b), 53(d)); *see also* Biscardi, 36 W. New Eng. L.Rev. at 17-37; Charles P. Kindregan, *Reforming Alimony: Massachusetts Reconsiders Postdivorce Spousal Support*, 46 Suffolk U.L.Rev. 13, 24-41 (2013) (same).

858 N.W.2d at 409-10.

[¶31] Virginia law provides that an obligor's attainment of full retirement age constitutes a material change in circumstances. Va. Code Ann. § 20-109(E). When a court is considering a modification of spousal support based on retirement, it must consider the following factors:

1. Whether retirement was contemplated by the court and specifically considered by the court when the spousal support was awarded;
2. Whether the retirement is mandatory or voluntary, and the terms and conditions related to such retirement;
3. Whether the retirement would result in a change in the income of either the payor or the payee spouse;
4. The age and health of the parties;
5. The duration and amount of spousal support already paid; and
6. The assets or property interest of each of the parties during the period from the date of the support order and up to the date of the hearing on modification or termination.

Va. Code Ann. § 20-109(F).

[¶32] In Oregon, courts are limited to finding a change in circumstances warranting modification of spousal support if the supporting spouse's retirement was made in "good faith." Or. Rev. Stat. Ann. § 107.135(4)(c). The

court considers the following factors when resolving whether retirement was taken in good faith:

> (A) Timing of the voluntary retirement or other reduction in financial status to coincide with court action in which the obligee seeks or is granted an increase in spousal support.
> (B) Whether all or most of the income producing assets and property were awarded to the obligor, and spousal support in lieu of such property was awarded to the obligee.
> (C) Extent of the obligor's dissipation of funds and assets prior to the voluntary retirement or soon after filing for the change of circumstances based on retirement.
> (D) If earned income is reduced and absent dissipation of funds or large gifts, whether the obligor has funds and assets from which the spousal support could have been paid.
> (E) Whether the obligor has given gifts of substantial value to others, including a current spouse, to the detriment of the obligor's ability to meet the preexisting obligation of spousal support.

Or. Rev. Stat. Ann. § 107.135(4)(d).

[¶33] I believe the current North Dakota framework for considering whether voluntary retirement constitutes a material change of circumstances, and whether it thereafter allows for modification of spousal support, unfairly leaves both obligors and obligees guessing about the likely result at the end of a hearing. Conversely, the foregoing statutes and cases provide samples of how other jurisdictions have sought to reduce the expense, and increase the predictability, of retirement-related modification proceedings. I urge legislative consideration of these legal developments and, in the absence of legislative consideration, I encourage litigants to squarely present this issue to the Court and allow us to revisit the *Ebach* line of cases.

[¶34] Daniel J. Crothers